616 So.2d 452 (1993)
STATE of Florida, Petitioner,
v.
Ramon ALEN, Respondent.
No. 79542.
Supreme Court of Florida.
April 8, 1993.
Robert A. Butterworth, Atty. Gen., and Charles M. Fahlbusch, Asst. Atty. Gen., Hollywood, for petitioner.
*453 Bennett H. Brummer, Public Defender, and Robert Kalter, Asst. Public Defender, Eleventh Judicial Circuit, Miami, for respondent.
McDONALD, Justice.
We review Alen v. State, 596 So.2d 1083 (Fla. 3d DCA 1992), in which the court held that the state and federal constitutions forbid peremptorily challenging Hispanic jurors solely on the basis of their ethnicity. We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. We approve the decision of the district court.
The state charged Alen with robbery and resisting arrest without violence. The jury found Alen guilty of robbery, but not guilty of resisting arrest. During jury selection, the state peremptorily challenged prospective juror Aida Seda without objection from the defense. Shortly thereafter, the state attempted to strike Deogracias Arjona with a peremptory challenge. The defense objected, claiming that the state showed a pattern of discrimination by excluding Hispanics from the jury in violation of State v. Neil, 457 So.2d 481 (Fla. 1984). The trial court ordered an inquiry to determine whether there was a substantial likelihood that the peremptory challenges were being exercised in a discriminatory manner.
In response to the court's inquiry, the state contended that it challenged Ms. Seda because she appeared uninterested and disgusted with the proceedings. With respect to the second Hispanic juror, Ms. Arjona, the state conceded that it did not have an objective basis for excluding her. However, the state claimed that it excluded Ms. Arjona in order to reach another Hispanic juror whom the state believed was more acceptable. The trial court held that the strike of Ms. Seda was based on her demeanor in the courtroom, and, therefore, the strike was nondiscriminatory. The trial court held that the strike of Ms. Arjona was also nondiscriminatory because the state's motive in exercising the challenge was to reach another Hispanic juror. The jury convicted Alen of robbery, and the judge sentenced him to twenty years imprisonment. Because of the jury strike the district court reversed and awarded Alen a new trial.
Under the Federal Constitution and the Constitution of the State of Florida, a criminal defendant is guaranteed the right to a trial by an impartial jury. U.S. Const. amend. VI; art. I, § 16, Fla. Const. Securing an impartial jury is accomplished, in part, by the use of the peremptory challenge, which allows both the prosecution and the defense to excuse potential jurors without explanation. Carroll v. State, 139 Fla. 233, 190 So. 437 (1939). Although the peremptory challenge contributes significantly to the selection of a fair jury, it is also a tool that can be intentionally or unintentionally transformed into a disguise for discrimination against distinct groups of people. As we stated in Neil, "[i]t was not intended that such challenges be used solely as a scalpel to excise a distinct racial group from a representative cross-section of society." 457 So.2d at 486.
In the instant case, Alen argues that the state's peremptory challenges of Ms. Seda and Ms. Arjona were intended to eliminate Hispanics from the jury in violation of Neil. Neil set forth the test that trial courts must use when confronted with the allegedly discriminatory use of peremptory challenges.[1] A Neil inquiry requires the person exercising the questioned peremptories to show that the challenges were not exercised solely on the basis of the prospective juror's race.
If the party shows that the challenges were based on the particular case at trial, the parties or witnesses, or characteristics of the challenged persons other than race, then the inquiry should end and jury selection should continue. On the other hand, if the party has actually been challenging prospective jurors solely on the basis of race, then the court *454 should dismiss that jury pool and start voir dire over with a new pool.
Neil, 457 So.2d at 487.
We specifically limited the impact of Neil to peremptory challenges exercised solely because of the prospective jurors' race. We also stated that the applicability of Neil to other groups would be addressed as such cases arose. In Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954), which held that persons of Mexican descent were a separate class distinct from whites, the United States Supreme Court recognized that "community prejudices are not static, and from time to time other differences from the community norm may define other groups which need the same protection [as racial groups]." Id. at 478, 74 S.Ct. at 670. The time now has come in Florida to extend Neil to protect potential jurors from being excluded from the jury solely on the basis of ethnicity.
Since our decision in Neil, the United States Supreme Court has held that race-based exclusions of jurors effected through peremptory challenges violate the Equal Protection Clause of the Fourteenth Amendment to the federal constitution. Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Taking Batson a step further, the Supreme Court addressed an issue similar to the one presented in the instant case in Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Hernandez claimed that the prosecutor in his criminal trial exercised peremptory challenges to exclude Latinos from the jury because of their ethnicity. Although the Court determined that the prosecutor offered a race-neutral basis for challenging Latino potential jurors, the Court implied that the discriminatory use of peremptory strikes against Latinos would violate the Equal Protection Clause. Similarly, under the tenets of the Equal Protection Clause of the Florida Constitution, jurors should not be rejected solely on the basis of their skin color or their ethnicity. Art. I, § 2, Fla. Const. To satisfy the state's constitutional guarantee of an impartial jury, citizens who are otherwise qualified to serve as impartial jurors cannot be peremptorily challenged based on their membership in a particular ethnic group.[2] Art. I, § 16, Fla. Const.
The state argues that, while Neil may apply to groups other than racial groups, Hispanics do not constitute a cognizable class entitled to protection under Neil. Although neither the Supreme Court nor the law of this state provides us with any precise definition of a cognizable class, the cognizability requirement inherently demands that the group be objectively discernible from the rest of the community.[3]See United States v. Potter, 552 F.2d 901 (9th Cir.1977). First, the group's population should be large enough that the general community recognizes it as an identifiable group in the community. Second, the group should be distinguished from the larger community by an internal cohesiveness of attitudes, ideas, or experiences that may not be adequately represented by other segments of society. Id.; Willis v. Kemp, 838 F.2d 1510 (11th Cir.1988).
*455 The complexity of defining a cognizable class is illustrated by the disagreement among the parties on what label properly describes the class at issue in this case. Both the trial court and the district court used the terms "Hispanic," "Spanish," and "Latin," without distinguishing among them.[4] As noted by Judge Gersten in his specially concurring opinion, the problem with such labels is that "each of the labels encompasses a distinct and far from homogeneous group." Alen, 596 So.2d at 1091. Like many ethnic groups, there are a variety of distinctive variables that divide the Hispanic community into subgroups, just as there are a variety of variables that divide other cognizable classes such as African Americans. See Teresa Sullivan, A Demographic Portrait of Hispanics in the United States: A New Social Agenda 7 (1985). Notwithstanding these distinctions among Hispanics, the size and the external and internal cohesiveness of this ethnic group qualify Hispanics as a cognizable class for Neil purposes.[5] We join the California Supreme Court in recognizing that
[m]any ties bind Hispanics together as a cognizable group within the community. Hispanics often share an ethnic and cultural "community of interest," including language, history, music, and religion. In addition, Hispanics have made notable achievements in the professions, the arts, industry and public life. On a more somber note, Hispanics, in relation to other Americans, share a host of harsh realities, such as relatively high unemployment, poverty, relative lack of educational opportunity and, of import to the present case, discrimination directed at them precisely because they are Hispanic.
People v. Trevino, 39 Cal.3d 667, 217 Cal. Rptr. 652, 659-60, 704 P.2d 719, 726-27 (1985).
When an identifying trait is a physically visible characteristic such as race or gender, the process of defining a class is comparably less arduous than defining a class of people in the same ethnic group. Although such salient characteristics as a person's native language and surname may represent ethnic commonality, we do not believe that these types of characteristics, standing alone, sufficiently describe Hispanics as a cognizable class. For example, a person who is born in Cuba, becomes a citizen of the United States at a young age, and is raised with English as her primary language, is no less Hispanic simply because she speaks English more frequently and fluently than she speaks Spanish. In the same vein, a person named Mary Smith who is born in the United States is no more Hispanic simply because she marries and adopts the surname of a man with a traditionally Hispanic name. Although a person's native language and surname may be used by a trial judge in determining whether a potential juror can be classified as a Hispanic, those characteristics are not strictly dispositive.
In Valle v. State, 474 So.2d 796 (Fla. 1985), vacated on other grounds, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986), we stated that "the term `Latin American' encompasses people from too many different countries and different cultural backgrounds and attitudes to constitute a single cognizable class for equal protection analysis." 474 So.2d at 800. The term "Latin American" denotes a person who comes from a geographical area, whereas the term "Hispanic" denotes a broader group of people who have a similar ethnic and cultural background, but may or may not have a country in Latin America as their place of national origin. To the extent that our decision today is inconsistent, we recede from our holding in Valle. Like the characteristics of language and surname, national origin is an important, but not a decisive, factor in determining a person's ethnicity.
*456 The trial judge is permitted discretion in determining the legitimacy of the ethnic-neutral reasons for excusing a juror. State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). Because the question of one's membership in a cognizable class is also a matter of fact, the trial judge is granted discretion in making this determination when an objection is made to a peremptory challenge.
With respect to the instant case, the state's use of the peremptory challenge to remove the first Hispanic juror, Ms. Seda, was ethnically neutral, as her demeanor reflected a lack of interest in the judicial proceedings. However, the state's use of the peremptory challenge of the second Hispanic juror, Ms. Arjona, violated her right not to be improperly removed from jury service because of a constitutionally impermissible prejudice. Jefferson v. State, 595 So.2d 38 (Fla. 1992). We agree with the district court that the ethnically motivated strike of Ms. Arjona could not be justified even though it was allegedly done to reach another Hispanic juror who ultimately served as an alternate. No explanation was given as to why Ms. Arjona, as opposed to other jurors, was selected for such a purpose. By failing to show the absence of pretext or that its reasons for excusing Ms. Arjona were supported by the record, the state failed to meet its burden of proof. Slappy, 522 So.2d at 23. Therefore, we approve the district court's decision to reverse the defendant's conviction and award him a new trial.
It is so ordered.
BARKETT, C.J., and SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
OVERTON, J., dissents.
NOTES
[1] Under State v. Johans, 613 So.2d 1319 (Fla. 1993), the trial court must conduct a State v. Neil, 457 So.2d 481 (Fla. 1984), inquiry if an objection is made that a peremptory challenge is being raised in a discriminatory manner.
[2] Because the defendant is entitled to object to the state's peremptory challenge, he also has standing to object to the exclusion of Hispanic prospective jurors. See Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (a defendant can raise an equal protection claim on behalf of a juror excluded because of race).
[3] Courts have disagreed about the standard to apply in determining cognizability under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and have struggled in deciding whether a particular classification satisfies the cognizability standards. Note, Due Process Limits on Prosecutorial Peremptory Challenges, 102 Harv.L.Rev. 1013, 1020 (1989). For Batson purposes, other cognizable groups have been recognized: United States v. Biaggi, 853 F.2d 89 (2d Cir.1988) (Italian-Americans), cert. denied, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); United States v. Chalan, 812 F.2d 1302 (10th Cir.1987) (Native Americans). Courts also have found certain groups that did not qualify as cognizable or distinctive: United States v. Canfield, 879 F.2d 446 (8th Cir.1989) (city residents); Ford v. Seabold, 841 F.2d 677 (6th Cir.) (young adults and college students), cert. denied, 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 334 (1988); Anaya v. Hansen, 781 F.2d 1 (1st Cir.1986) (blue collar workers and "less educated individuals").
[4] In the interest of consistency within this opinion, we use the broader term "Hispanic."
[5] Hispanics have been classified as a cognizable class in United States v. Alvarado, 891 F.2d 439 (2d Cir.1989), vacated on other grounds, 497 U.S. 543, 110 S.Ct. 2995, 111 L.Ed.2d 439 (1990); United States v. Sanchez-Lopez, 879 F.2d 541 (9th Cir.1989); People v. Trevino, 39 Cal.3d 667, 217 Cal. Rptr. 652, 704 P.2d 719 (1985); Mejia v. State, 328 Md. 522, 616 A.2d 356 (1992).