636 So.2d 777 (1994)
Simon JOSEPH, Appellant,
v.
The STATE of Florida, Appellee.
No. 93-264.
District Court of Appeal of Florida, Third District.
April 19, 1994.
*778 Bennett H. Brummer, Public Defender and Rosa Figarola, Asst. Public Defender, and Ronald S. Lowy, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Charles M. Fahlbusch, Asst. Atty. Gen., for appellee.
Before NESBITT, JORGENSON and LEVY, JJ.
*779 LEVY, Judge.
This case presents the question of whether exercising a peremptory challenge of a Jewish venireperson, based solely upon the venireperson being Jewish, is constitutionally impermissible.
Simon Joseph, the defendant, was charged with battery on a law enforcement officer, after a confrontation with a Miami Beach parking enforcement officer, who had ticketed the defendant's parked taxi cab.
During voir dire at the defendant's trial, the State sought to excuse juror Marjorie Friedman by using a peremptory challenge. The following exchange then ensued:
DEFENSE COUNSEL: Judge, I'm going to ask  there is this line of cases that the State cannot excuse on the basis of prejudice.
THE COURT: I think the line you're referring to is the Neal/Slappy [sic] (phonetic) case. So far, I think that case only applies to black [sic] and Latins.
DEFENSE COUNSEL: What's been before, I don't know, but what I'm observing today is what I'm observing today. In the spirit of those cases, I perceive the only reason they're striking Ms. Friedman is they're perceiving her as being Jewish, and somehow identifying with the defendant, and on the basis of that, I would like for them to justify the strike of Ms. Friedman.
PROSECUTOR: I don't think this is a Neal/Slappy [sic].
THE COURT: Well, I'm not going to do that. I will deny your request. I don't think that line of cases has ever been upheld or applied to any other minority groups, but for the exception of Latins and blacks. I understand your point, and I think it should be preserved for appeal. You may be correct, but I will overrule it.
Ms. Friedman was excused from the jury. The trial proceeded and the defendant was convicted. The defendant now appeals, claiming that the trial court erred in overruling his objection to the State's peremptory challenge of Ms. Friedman.
In State v. Neil,[1] the Florida Supreme Court held that peremptory challenges may not be used to challenge potential jurors solely based upon the juror's race. Neil, 457 So.2d at 486. While Neil involved racial discrimination, the Supreme Court recognized that discrimination could be based upon other factors, such as religious, ethnic, and sexual differences, and specifically stated that "[t]he applicability [of this decision] to other groups will be left open and will be determined as such cases arise." Neil, 457 So.2d at 487. Recently, the Supreme Court extended Neil to apply to Hispanics. State v. Alen, 616 So.2d 452 (Fla. 1993), approving, 596 So.2d 1083 (Fla. 3d DCA 1992) (en banc). In so doing, the Supreme Court stated that
[t]he time now has come in Florida to extend Neil to protect potential jurors from being excluded from the jury solely on the basis of ethnicity.

... To satisfy the state's constitutional guarantee of an impartial jury, citizens who are otherwise qualified to serve as impartial jurors cannot be peremptorily challenged based on their membership in a particular ethnic group.

Alen, 616 So.2d at 454 (footnote omitted) (emphasis supplied).
While the definitions of the terms "ethnicity" and "ethnic group" are certainly susceptible to debate, Alen left no doubt that Neil could be properly applied to groups other than racial groups. In order to receive Neil protections, an ethnic group must meet the Supreme Court's definition of a "cognizable class". As expressed in Alen, "the cognizability requirement inherently demands that the group be objectively discernible from the rest of the community." Alen, 616 So.2d at 454 (footnote omitted). There are two aspects to determining if an ethnic group is objectively discernible:
First, the group's population should be large enough that the general community recognizes it as an identifiable group in the community. Second, the group should be distinguished from the larger community by an internal cohesiveness of attitudes, ideas, or experiences that may not be adequately *780 represented by other segments of society.
Alen, 616 So.2d at 454. Although there is no definitive list of characteristics which objectively indicate membership in an ethnic group, factors such as race, gender, native language, and surname have been used as indicia. Alen, 616 So.2d at 455.[2]
This brings us to the narrow question which we today address: Do Jews constitute a cognizable class under Alen, rendering the peremptory challenge of a Jewish venireperson, based solely upon the venireperson being Jewish, unconstitutional under the Florida Constitution and Neil? We answer this question in the affirmative.
Applying the two-pronged test for cognizability, we conclude that Jews are a cognizable class. The first prong of the test is whether the group's population is large enough that the general community recognizes it as an identifiable group. Alen, 616 So.2d at 454. The Jewish population of Dade County, the county from which this venire was drawn, meets this element. The Jewish population of Dade County in 1990 was approximately 202,000 people. See Ira M. Sheskin, The Jews of South Florida, in South Florida: The Winds of Change 163, 177 (Thomas D. Boswell ed., 1991). The 1990 U.S. Census reported the total Dade County population as 1,937,094.[3]Florida Statistical Abstract 15 (Anne H. Shermyen ed., 26th ed., 1992). Consequently, Jews make up approximately 10% of Dade County's population. We conclude that both the percentage and absolute number of Jews in the Dade County population satisfies the first prong of the Alen cognizability test.
The second prong of the cognizability test, internal group cohesiveness, is also satisfied. Shared religious beliefs are one characteristic of an ethnic group. Alen v. State, 596 So.2d 1083, 1085 (Fla. 3d DCA 1992) (en banc), approved, 616 So.2d 452 (Fla. 1993). Jews share a large core of attitudes and ideas which stem from their common religious beliefs. It is common knowledge that Jews celebrate their sabbath on Saturday, not Sunday, and do not celebrate Christmas. These two facts alone significantly distinguish Jews from other segments of society. Jews also celebrate their own important religious holidays. Finally, Jews share a common experience of persecution which distinguishes them from other segments of society, such as the attempted genocide of Jews, for reasons based solely upon their religion, at the hands of the Nazis. This internal cohesiveness of beliefs and experiences more than meets the second element of the Alen test.
Finally, Jews are sufficiently objectively discernible from the rest of the community in order to be classified as a cognizable class. A person's surname is a recognized characteristic of membership in a cognizable class. Alen, 616 So.2d at 455. From the record before us, Ms. Friedman's name appears to have been the only indicia that she was possibly Jewish, and was properly considered in raising a Neil objection. Other objective criteria which indicate that a person is Jewish, such as the wearing of a yarmulke,[4] a six-pointed star,[5] or the distinctive attire of Hassidic Jews,[6] may be present in other cases. Therefore, since Jews are objectively discernible, we conclude that Jews are a cognizable class under Alen. See Alen, 596 So.2d 1083, 1087 n. 2 (Fla. 3d DCA 1992) (en banc) (Phillip Hubbart, J., concurring) ("Jewish Americans might also qualify for Neil protection as a protected religious group."), approved, 616 So.2d 452 (Fla. 1993); see also Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed.2d 594 *781 (1987) (holding that Jews are a protected group under 42 U.S.C. § 1982); Bachman v. St. Monica's Congregation, 902 F.2d 1259 (7th Cir.1990) (holding that Jews are a "race" for purposes of 42 U.S.C. §§ 1981, 1982); United States v. Gelb, 881 F.2d 1155, 1161 (2d Cir.) (holding that Jews are a cognizable group for purposes of sixth amendment fair cross-section analysis), cert. denied, 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989). A peremptory challenge exercised against a potential juror solely because the juror is Jewish violates the Florida Constitution.
We are careful to point out that our decision is grounded upon principles of state constitutional law. See Art. I, § 16, Fla. Const.; Alen; Neil. Having concluded that the Florida Constitution prohibits the kind of discrimination involved in this case, we do not analyze this issue under the federal constitution or caselaw. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (holding that racial discrimination in use of peremptory challenges violates federal constitution). This is the first case in Florida condemning the discriminatory use of peremptory challenges against Jewish jurors. Cf. Laidler v. State, 627 So.2d 1263 (Fla. 4th DCA 1993) (peremptory challenges used against women based solely upon gender violates state and federal constitutions). Moreover, the few cases from other courts and jurisdictions discussing peremptory challenges based upon religious affiliation are unenlightening. See United States v. Greer, 939 F.2d 1076, 1085-86 n. 9 (5th Cir.1991) (holding, in dicta, that Batson protects Jewish jurors), vacated in part on reh'g en banc, 968 F.2d 433 (5th Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1390, 122 L.Ed.2d 764 (1993); People v. Wheeler, 22 Cal.3d 258, 148 Cal. Rptr. 890, 902, 583 P.2d 748, 761 (1978) (peremptory challenges exercised on "racial, religious, ethnic, or similar grounds" violates California Constitution); People v. Kaplan, 176 A.D.2d 821, 575 N.Y.S.2d 146 (1991) (upholding challenge of two jurors with Jewish-sounding names because prosecution provided race-neutral reasons for excusing them); People v. Kagan, 101 Misc.2d 274, 420 N.Y.S.2d 987 (N.Y. Sup. Ct. 1979) (pre-Batson case; defendant failed to show that excusal of four Jewish potential jurors constituted systematic discrimination by prosecution); Casarez v. State, 857 S.W.2d 779, 784 (Tex. Crim. App. 1993) (en banc) (declining to extend Batson protections to religious affiliation).
The State contends that the defendant herein did not meet the threshold requirement of Neil, of showing that the challenged juror was a member of a distinct racial group,[7] because no showing was made that Ms. Friedman was, in fact, Jewish. Neil, 457 So.2d at 486. However, we have carefully considered the transcript of the voir dire. There is no question that the trial judge understood the basis of the defendant's objection and, furthermore, that he overruled it as a matter of law based upon his stated conclusion that Neil applied only to African-Americans and Hispanics. This statement of law by the trial judge was incorrect, and requires the reversal of the defendant's conviction, and a remand for a new trial. See State v. Johans, 613 So.2d 1319, 1322 (Fla. 1993) ("[T]he proper remedy in all cases where the trial court errs in failing to hold a Neil inquiry is to reverse and remand for a new trial.").
We are not unmindful of the impact of today's decision, which may be characterized by some as another nail in the coffin of the peremptory challenge system. Today's result was eloquently foreshadowed by our colleague Judge Phillip Hubbart in his concurring opinion in our en banc consideration of Alen:
This inescapable extension of Neil will clearly protect a large number of minority groups, which extension, in turn, will surely embrace everyone in the state under one or more protected categories. For example, in Dade County alone, there are many cognizable minority ethnic groups besides Hispanics: including Anglo Americans, Jewish Americans, native Americans, Arab Americans, Asian Americans, and other European Americans.
*782 Alen v. State, 596 So.2d 1083, 1087 (Fla. 3d DCA 1992) (en banc) (Phillip Hubbart, J., concurring) (footnote omitted), approved, 616 So.2d 452 (Fla. 1993); accord Brown v. State, 624 So.2d 299, 300 (Fla. 1st DCA 1993). While Judge Hubbart's prediction may now be one step closer to coming true, it remains equally true that "the appearance of discrimination in court procedure is especially reprehensible, since it is the complete antithesis of the court's reason for being  to insure equality of treatment and evenhanded justice." State v. Slappy, 522 So.2d 18, 20 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). We affirm the tenet that discrimination in jury service, whether against African-Americans, Hispanics, Jews, or any other cognizable class, is equally deserving of our condemnation.
Since the defendant is entitled to a new trial, we address the evidentiary issue he has raised. The defendant claims that certain statements made by the parking enforcement officer to other law enforcement officers shortly after the confrontation were inadmissible hearsay. However, these statements related to the confrontation, and were made within minutes of the confrontation while the parking enforcement officer was still visibly upset over the entire incident. Consequently, they were properly admitted under the excited utterance hearsay exception. See § 90.803(2), Fla. Stat. (1991); Torres-Arboledo v. State, 524 So.2d 403, 408 (Fla.), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988); Edmond v. State, 559 So.2d 85, 86 (Fla. 3d DCA), review denied, 570 So.2d 1304 (Fla. 1990).
The defendant's conviction is reversed, and this case is remanded for a new trial.
Reversed and remanded.
NOTES
[1] 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986).
[2] It is important to bear in mind that this test applies only to ethnic groups. While there is no question that African-Americans and Hispanics meet the test of cognizability, other clearly non-ethnic groups, such as handicapped persons, may also satisfy the test.
[3] The U.S. Bureau of the Census does not gather information on religious preference. See id. at 164.
[4] A skullcap worn by Jewish males. Webster's Third New International Dictionary 2647 (1986).
[5] Also known as a magen david, or Star of David, this is widely used as a symbol of Judaism. Webster's Third New International Dictionary 1358 (1986).
[6] A particular sect of Judaism. Webster's Third New International Dictionary 1037 (1986).
[7] We assume that, in light of Alen, a Neil objection must now be supported by a showing that the challenged juror is a member of a cognizable class, rather than a distinct racial group.