STATE of Wisconsin, Plaintiff-Respondent,

v.

Saturnino R. GUERRA-REYNA, Defendant-Appellant.

Court of Appeals

*No. 93–3464–CR. Submitted on briefs September 14, 1994.—Decided April 25, 1996.*

(Also reported in 549 N.W.2d 779.)

For the defendant-appellant the cause was submitted on the briefs of *Suzanne Hagopian*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sharon Ruhly*, assistant attorney general.

Before Gartzke, P.J., Sundby and Vergeront, JJ.

SUNDBY, J.   Defendant-Appellant Saturnino R. Guerra-Reyna appeals from a judgment convicting him of two counts of first-degree sexual assault and an order denying his motion for postconviction relief. He presents a unique question:

> May a prosecutor use a peremptory strike to remove from the jury panel a person of a "cognizable" class because the prosecutor believes that a person of that class may be biased against the defendant?

We conclude that regardless of his or her good faith, the prosecutor may not use a peremptory strike to remove a prospective juror from the jury panel because of the prospective juror's race or membership in a "cognizable" class. Denying a person participation in jury service on account of race or membership in a cognizable class unconstitutionally discriminates against the excluded juror. We therefore reverse the judgment and order and remand for a new trial.

Guerra-Reyna was charged with two counts of first-degree sexual assault and one count of exposing his genitals to a child. A jury acquitted him on the exposure count but found him guilty on the two sexual assault counts. He claims that the prosecutor denied him equal protection of the law when he struck two prospective jurors with Hispanic surnames: Alejandro Lopez and Karen Latorre. Guerra-Reyna is Cuban. Defense counsel timely objected and the prosecutor explained his peremptory challenges.

As to prospective juror Latorre, the prosecutor stated that he was concerned that she seemed too eager to reveal that she too was Cuban but was not biased. As to Lopez, he explained:

> As to Mr. Lopez, I believe that surname is not only Hispanic, but is Mexican, and, although I did

not have any colloquy with Mr. Lopez . . . whether it is a correct perception or an incorrect perception, I have in the past had some reason to believe that relations historically between Mexican people and Cuban people have not been good, and, obviously, I don't want any race or ethnicity or national background to factor in . . . any way. Those are the reasons for striking these two, and it was not based on the fact that they are Hispanic or Spanish speaking.

■

When a defendant objects to a prosecutor's peremptory challenge on equal protection grounds, the trial court resolves the objection in three steps. *See Batson v. Kentucky*, 476 U.S. 79, 86-96 (1986); *State v. Lopez*, 173 Wis. 2d 724, 728, 496 N.W.2d 617, 618 (Ct. App. 1992). First, the defendant must make a *prima facie* case of discrimination. In this case, the prosecutor tacitly conceded that Guerra-Reyna had made a *prima facie* case of discrimination as to the prospective jurors. The burden then shifted to the State to rebut that case. *See Hernandez v. New York*, 500 U.S. 352, 358-59 (1991). Whether the prosecutor had a "discriminatory intent" when he exercised peremptory strikes to remove Latorre and Lopez from the jury panel is a "pure issue of fact." *Id.* at 364-65. To that finding, we apply the "clearly erroneous" test. *Lopez*, 173 Wis. 2d at 729, 496 N.W.2d at 619; *see* § 805.17(2), STATS.

The trial court's finding that the prosecutor did not harbor a discriminatory intent when he struck prospective juror Latorre is not clearly erroneous. Presumably, the trial court accepted the prosecutor's explanation as to why he struck Latorre. We cannot conclude as a matter of law that the prosecutor's "hunch" or "feeling" masked a discriminatory intent.

754

The United States Supreme Court has acknowledged that the peremptory challenge occupies "an important position in our trial procedures." *Holland v. Illinois*, 493 U.S. 474, 484 (1990) (quoting *Batson*, 476 U.S. at 98). In *Holland*, the Court stated:

> Peremptory challenges, by enabling each side to exclude those jurors it believes will be most partial toward the other side, are a means of "eliminat[ing] extremes of partiality on both sides," thereby "assuring the selection of a qualified *and unbiased* jury."

*Id.* at 484 (quoting *Batson*, 476 U.S. at 91) (citation omitted).[1]

As to prospective juror Lopez, however, the prosecutor candidly acknowledged that he struck him because he was Mexican. The State argues that we need not reach the question of the prosecutor's intent because Lopez is not a member of a cognizable class under *Batson*. The State contends that *Batson* challenges based on "race" should not be extended to groups the Court has not specifically identified as falling within the cognizable "race" class. The State

---

[1] "When asked about the primary purpose and value of the peremptory challenge, a majority of [federal] judges viewed such challenges as a mechanism for attorneys to remove potential jurors biased in favor of the opposition." Christopher E. Smith & Roxanne Ochoa, *The Peremptory Challenge in the Eyes of the Trial Judge*, 79 JUDICATURE 185, 186 (1996). Commenting on the views of one United States Supreme Court justice, the article noted: "Justice Antonin Scalia defends the use of peremptory challenges as an 'ages-old right' and an 'important . . . [and] necessary' part of the American jury system." *Id.* at 185 (quoting *Georgia v. McCollum*, 505 U.S. 42, 70 (1992) (Scalia, J., dissenting); *Holland v. Illinois*, 493 U.S. 474, 484 (1990)).

argues that the trial court "necessarily" had to have concluded that the prosecutor's concession that he struck Lopez because he was Mexican was not the same as saying he struck Lopez because he had a Hispanic or Spanish surname. We understand the State to argue that "Mexican" refers to ancestry or national origin and not race.

The State acknowledges that in a 1977 decision— *Castaneda v. Partida*, 430 U.S. 482, 495—the Court said that "it is no longer open to dispute that Mexican-Americans are a clearly identifiable class." The State contends, however, that by 1991—*Hernandez v. New York*—the "race" designation for *Batson* purposes was "Hispanic." The State argues that striking a person included in such a "generic" group—Mexican-Americans, for example—is not objectionable unless the included class has been specifically identified as a "race" for *Batson* purposes. The State's argument is ingenious but dizzying. Further, it does not stand up to analysis; distinctions among subgroups of Hispanics are not so pronounced that each subgroup must be considered separately to determine whether a member of the subgroup has been discriminated against. *See State v. Alen*, 616 So.2d 452, 455 (Fla. 1993). In order to constitute a cognizable class for constitutional purposes, the group must be objectively identifiable from the rest of the community, be large enough that the general community recognizes it as an identifiable group, and its members share ethnic and cultural traditions and customs, and, perhaps most important, share discrimination because of their identity and "differentness." *Id.* We conclude that Mexican-Americans, although included within the larger "Hispanic" class, are readily identifiable as targets of discrimination who are entitled to equal protection of

the law in all respects, including jury service. *See* Jay M. Zitter, Annotation, *Use of Peremptory Challenges to Exclude Ethnic and Racial Groups, Other Than Black Americans, from Criminal Jury—Post-**Batson** State Cases*, 20 A.L.R. 5th 398, 424-26 (1994).

In this case, it can be argued that the prosecutor protected Guerra-Reyna from possible bias when he peremptorially challenged Lopez. That argument does not recognize juror Lopez's right to jury service. In *Powers v. Ohio*, 499 U.S. 400 (1991), the Court held that a prospective juror has a constitutional right not to be excluded from jury service on account of his or her race or membership in a cognizable class. In *Powers*, a white criminal defendant successfully maintained his objection to the prosecutor's peremptory challenge to remove a black venireperson. The State used ten peremptory challenges, six of which removed prospective black jurors. The Court's discussion of this point requires extensive citation:

> In *Batson*, we spoke of the harm caused when a defendant is tried by a tribunal from which members of his own race have been excluded. But we did not limit our discussion in *Batson* to that one aspect of the harm caused by the violation. . . . *Batson* recognized that a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large.
>
> The opportunity for ordinary citizens to participate in the administration of justice has long been recognized as one of the principal justifications for retaining the jury system. . . .
>
> . . . [O]ver 150 years ago, Alexis de Tocqueville remarked:
>
>> "[T]he institution of the jury raises the people itself, or at least a class of citizens,

757

"to the bench of judicial authority [and] invests the people, or that class of citizens, with the direction of society."

. . . .

". . . The jury . . . invests each citizen with a kind of magistracy; it makes them all feel the duties which they are bound to discharge towards society; and the part which they take in the Government. By obliging men to turn their attention to affairs which are not exclusively their own, it rubs off that individual egotism which is the rust of society."

. . . .

"I do not know whether the jury is useful to those who are in litigation; but I am certain it is highly beneficial to those who decide the litigation; and I look upon it as one of the most efficacious means for the education of the people which society can employ." 1 Democracy In America 334-337 (Schocken 1st ed 1961).

499 U.S. at 406-07.

The Court confirmed its previously expressed belief that exclusion from jury service because of skin color may arouse in the excluded juror a feeling of stigma or dishonor. *Id.* at 410. Because of the practical difficulty of an excluded juror vindicating his or her right to jury service, the Court allowed the defendant to raise the juror's equal protection rights. *Id.* at 414. The Court concluded:

Both the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom. A venireperson excluded from jury service because of

race suffers a profound personal humiliation heightened by its public character. The rejected juror may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard. This congruence of interests makes it necessary and appropriate for the defendant to raise the rights of the juror.

*Id.* at 413-14.

*Powers* does not directly address the situation where the prosecutor's motive for a peremptory challenge based on the juror's membership in a cognizable class is to protect the defendant from possible bias of the juror. However, for the reasons expressed by the Court, the motive of protecting the defendant cannot justify a challenge that is based solely on the juror's membership in a cognizable class. The prosecutor here did not have any basis for assuming bias by Lopez other than his belief that Lopez was Mexican. This is an impermissible basis for a peremptory challenge, whether the challenge is made by the prosecutor or the defendant.

We therefore conclude as a matter of law that excluding a prospective juror from jury service because of race or membership in a cognizable class can never be "neutral," regardless of the prosecutor's good faith. Guerra-Reyna is therefore entitled to a new trial. Because we dispose of this case on this ground, we do not reach defendant's other issues. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983). We have considered the State's claim that Guerra-Reyna's objection to the exclusion of Latorre and Lopez was not timely and conclude that its claim is without merit.

759

*By the Court.*—Judgment and order reversed and cause remanded.