929 So.2d 1176 (2006)
Michael OLIBRICES, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-2104.
District Court of Appeal of Florida, Fourth District.
June 7, 2006.
Carey Haughwout, Public Defender, and Jeffrey Golant, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
During jury selection in this criminal case the State exercised a peremptory challenge against juror Mohammed Kahn. *1177 Thereupon defendant objected, asking the court to require a non-invidious reason.[1] The following then ensued:

Court: Is he a minority that's recognized under Neil Slappy?[2] I have never heard Muslim recognized under Neil Slappy.

Defense: Your honor, if you give me a moment to look through my notes, that Neil Slappy can be used on anyone now.

Court: No, not anyone. It has to be a recognized class of people that resides in the Community. So far, the cases I have seen are race. I have seen Spanish, Jewish; I haven't seen any Muslim.

State: Your honor, I don't know if he was ever asked that question. I don't know what his religious affiliation is. How could I strike somebody on religious affiliation?

Court: He is Pakistani. And I don't think there's a significant number of Pakistanis in the United States to come under Neil Slappy. There was nothing shown as to his religion.

State: Is it Hindu? I don't know what the religion is in Pakistan.

Defense: There are many Muslims.
. . .

Court: Okay. I think counsel is looking up whether or not Pakistani comes under Neil Slappy, and I haven't seen a case where Pakistani  . By that theory, then, everyone would come under Neil Slappy because everyone came from somewhere.

Defense: Your Honor, I said the fact that he was Muslim.

Court: There was no testimony whatsoever that he is Muslim, was there? It's just an assumption on your part. He said he was Pakistani. That's the ethnicity that I have.

Defense: And that assumption is based on, Your Honor, the name Mohammad is common.

Court: Well, unless you can show me a case where a Pakistani is excluded, or that's something under Neil Slappy, that Pakistanis are a recognized group that comprises a group under Neil Slappy. I have never seen a case on that. So I will deny it. Okay. He is struck. Mohammad Khan is struck by the state.

Defense: And I just object for the record, Your Honor.
Defendant was convicted and appeals. We reverse.[3]
The exclusion of jurors by peremptory challenge under Florida law is subject to judicial examination to establish whether the prospective juror has been singled out for invidious reasons. As the *1178 court explained in Muhammad v. State, 782 So.2d 343 (Fla.2001):
"The right to exercise peremptory challenges is no longer completely unfettered. It is now . . . impermissible to exercise challenges on the basis of race, gender, or ethnicity. See, e.g., Abshire v. State, 642 So.2d 542, 543-44 (Fla. 1994); State v. Alen, 616 So.2d 452, 454 (Fla.1993); State v. Neil, 457 So.2d 481, 486 (Fla.1984), receded from on other grounds, State v. Johans, 613 So.2d 1319, 1321 (Fla.1993). Accordingly, we recede from the language to the contrary in Francis v. State, 413 So.2d 1175, 1179 (Fla.1982)." [e.s.]
782 So.2d at 352, n. 4. In Dorsey v. State, 868 So.2d 1192 (Fla.2003), during a discussion of alleged impermissible peremptory challenges of jurors on invidious grounds the court said:
In response to the dissent's suggestion that this holding applies to jurors of a `particular gender, occupation or profession or other economic, social, religious, political, or geographic group,' we note that this Court has not extended Neil's protections beyond peremptory challenges based on race, gender, and ethnicity.
868 So.2d at 1202 n. 8 [c.o.]. This is therefore  at least partially  an issue of first impression.
The term ethnic  and by necessary implication its sibling, ethnicity  is understood to mean: "Of or relating to sizable groups of people sharing a common and distinctive racial, national, religious, linguistic, or cultural heritage." AMERICAN HERITAGE DICTIONARY 630 (3d ed. 1992). According to an electronic encyclopedia:
"An ethnic group is a human population whose members identify with each other, usually on the basis of a presumed common genealogy or ancestry (Smith 1986). Ethnic groups are also usually united by common cultural, behavioral, linguistic, or religious practices. In this sense, an ethnic group is also a cultural community. . . .
While ethnicity and race are related concepts (Abizadeh 2001), the concept of ethnicity is rooted in the idea of social groups, marked especially by shared nationality, tribal affiliation, religious faith, shared language, or cultural and traditional origins and backgrounds; whereas race is rooted in the idea of a biological classification of Homo sapiens according to chosen genotypic and/or phenotypic traits."[4]
The modern sense of the word ethnic thus clearly means "a member of a particular ethnic group" which, in turn, may involve a particular religious identification. Given this rather definite inclusion of religion in the elements of ethnicity, it is obvious that sharing a common religion cannot foreclose a social group from having a common ethnicity. Dorsey's disclaimer of any holding applying Neil Slappy equally to the singular classification of religion does not yield the conclusion that the principle may not be applied where a common religious heritage is also involved in the shared identity of a given ethnic group.[5]
*1179 Ethnicity was formally recognized for Neil Slappy purposes in State v. Alen, 616 So.2d 452 (Fla.1993). There, peremptory challenges were admittedly used to excuse potential Hispanic jurors. In extending Neil to persons of Hispanic ethnicity, the court offered the following by way of explanation:
"`[m]any ties bind Hispanics together as a cognizable group within the community. Hispanics often share an ethnic and cultural `community of interest,' including language, history, music, and religion. In addition, Hispanics have made notable achievements in the professions, the arts, industry and public life. On a more somber note, Hispanics, in relation to other Americans, share a host of harsh realities, such as relatively high unemployment, poverty, relative lack of educational opportunity and, of import to the present case, discrimination directed at them precisely because they are Hispanic.'"
616 So.2d at 455 (citing People v. Trevino, 39 Cal.3d 667, 217 Cal.Rptr. 652, 659-60, 704 P.2d 719, 726-27 (1985)).
Alen attempted to suggest a specific inquiry to assist in a judicial determination of whether a given group may be deemed a "cognizable class" for Neil purposes: "the cognizability requirement inherently demands that the group be objectively discernible from the rest of the community." [e.s.] 616 So.2d at 454. The court said:
"First, the group's population should be large enough that the general community recognizes it as an identifiable group in the community. Second, the group should be distinguished from the larger community by an internal cohesiveness of attitudes, ideas, or experiences that may not be adequately represented by other segments of society."
616 So.2d at 454. We do not think that the term community in this explanation should be understood in a physical sense but, instead, more as metaphor. We read it to refer to social groups linked by origin, language, culture and religion, not necessarily to a physical collection of people or houses in a city, county or nation. It is also not limited to oppressed minorities, for a party to litigation may also seek to use race, sex or ethnicity to remove members of the dominant social group from a proposed jury. In short, the court's use of community in Alen should be read as shorthand for both de jure social groups, as well as racial, ethnic or religious groups sharing common characteristics a party is seeking invidiously to exclude.
We think the community of Pakistani people in the United States  numbering about 500,000 people  is large enough to be, by consensus, an objectively discernible group for ethnic classification. By population Pakistan is the sixth largest country in the world, sharing at least two dominant languages, a common culture, and is overwhelmingly Muslim.[6] The population is heavily Semitic in origin. We therefore think its culture, language, history and  yes  its religion, make it objectively and discernibly large, distinct and homogeneous enough to be deemed an ethnic group capable of identification.
In fact we find that any difficulties in distinguishing this group are less daunting than those experienced by the Alen court's attempt to describe the shared characteristics of the Hispanic ethnic group. 616 So.2d at 455. If Hispanics in this country do not necessarily have a common language, national origin, unique culture or *1180 religion, the Pakistanis here are more likely to have all of these characteristics in common. Moreover, in the wake of September 11, 2001, and the ensuing War on Terror against enemies who are thought fanatically Muslim and Arab or Persian in origin, the possibility of group-based, invidious discrimination against Pakistanis in this country is not fanciful but real.
This juror was a member of an objectively discernible ethnic group. Whether he is thought of as Pakistani or as a practicing Muslim, Mr. Khan's membership within the objectively discernible group of Pakistani Muslims was the basis for the objection to the exercise of the peremptory challenge. The Florida cases make plain that the protection of Neil Slappy applies when a prospective juror is being barred from service because of membership in an objectively discernible ethnic group. Defendant's objection was therefore based on the juror being excluded because of his ethnicity.
We conclude that whether the juror was challenged because he is of Pakistani origin or because his religious belief is Muslim, it would be a Neil Slappy violation to exercise a peremptory challenge of him on either account. In facially rejecting the objection to this challenge, it was error for the trial judge to conclude that no ethnicity violation could be shown because Pakistanis are not recognizable as an ethnic group under Neil Slappy.
Reversed for New Trial.
STEVENSON, C.J., and GUNTHER, J., concur.
NOTES
[1] Actually, defense counsel used the term "race neutral" [e.s.] in seeking the State's justification for the strike. Objections to peremptory challenges of prospective jurors based on race, sex or ethnicity may actually involve more than one of these classifications. The term "race neutral" is therefore under-inclusive by two-thirds and hence unsuitable. A better term would be non-invidious. That is the one we have used here.
[2] Referring to State v. Neil, 457 So.2d 481 (Fla.1984), and State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). See also Melbourne v. State, 679 So.2d 759, 764 (Fla. 1996). The elimination of prospective jurors on invidious grounds such as race and sex also offends federal law. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[3] We reject the State's argument that this issue was not preserved. Our review of the record reveals that the timing, sequence and context are such that the trial judge was under no illusion that defendant had abandoned this issue.
[4] WIKIPEDIA.ORG (site visited May 11, 2006).
[5] In the translation of ancient Hebrew texts into Greek for the Christian Scriptures, the Greek word ethniks was used for the Hebrew word goyim. Thus while the early meaning of ethniks was a religious reference to gentiles, that noun usage disappeared after 1728. The adjectival, ethnic, a religious classification referring to heathen to set them apart from Christian and Jewish people, is still used. See AMERICAN HERITAGE DICTIONARY 630 (3d ed. 1992) (Word History note following definitions of ethnic). Yet, even though the term ethnic might be equated primarily with a shared religion, to ascribe that meaning in the Neil Slappy context could have the effect of equating ethnicity with religion, the very thing Dorsey was at pains to disclaim deciding.
[6] In fact, its official title is The Islamic Republic of Pakistan.