DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOEL IVORY JONES,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-2779

[November 1, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jack S. Cox, Judge; L.T. Case No. 50-2014-CF-008606-AXXX-MB .

Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

*Affirmed.*

CONNER and FORST, JJ., concur.
KLINGENSMITH, J., concurs specially with opinion.

KLINGENSMITH, J., concurring specially.

In this case, defense counsel objected to the State exercising a peremptory challenge against a white male juror who may have identified with the Hispanic class. Defense counsel requested both a race and gender neutral basis for the strike:

> [Defense counsel]: Judge, we would object to the State exercising a peremptory challenge against [the juror] who is identified with the Hispanic class and would request a race neutral --
> THE COURT: Okay.

[Prosecutor]: Judge, he's a white male.
[Defense counsel]: Well, we request the gender neutral reason. We would request both.
THE COURT: So your position is that he's Hispanic, okay, and that it's gender?
[Defense counsel]: And he's a male.

The trial judge ultimately concluded there was a neutral basis for the strike. I agree with my colleagues in affirming the trial court's decision because nothing indicates that the strike of the prospective juror in this case was improperly motivated, nor could any such conclusion be reached on this record.

However, I write to specially concur in this opinion to express my dismay at what I view as the gradual and continual erosion of the peremptory challenge. Years of court decisions now require trial judges to be the arbiters of the motivations behind these challenges, placing a burden on judges to be mind-readers in assessing the genuineness of such challenges.

"The peremptory challenge is 'a practice of ancient origin' and is 'part of our common law heritage.'" *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 147 (1994) (O'Connor, J., concurring) (quoting *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 639 (1991) (O'Connor, J., dissenting)). While there is no freestanding constitutional right to exercise peremptory challenges at either the state or federal level, Florida courts have long recognized that "such challenges are nonetheless 'one of the most important of the rights secured to the accused.'" *Smith v. State*, 59 So. 3d 1107, 1111 (Fla. 2011) (quoting *Busby v. State*, 894 So. 2d 88, 98 (Fla. 2004)). The central function of peremptory challenges is to "enabl[e] each side to exclude those jurors it believes will be most partial toward the other side." *Holland v. Illinois*, 493 U.S. 474, 484 (1990). Recognizing the interplay between voir dire and peremptory challenges in American trials, the United States Supreme Court noted that jury selection "operat[es] as a predicate for the exercise of peremptories," the persistence and extensive use of which "demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury." *Swain v. Alabama*, 380 U.S. 202, 219 (1965), *overruled on other grounds*, *Batson v. Kentucky*, 476 U.S. 79 (1986).

In *J.E.B.*, Justice O'Connor stated that "[i]n further constitutionalizing jury selection procedures, the Court increases the number of cases in which jury selection—once a sideshow—will become part of the main event." 511 U.S. at 147 (O'Connor, J., concurring). She continued, stating

that "[b]ecause I believe the peremptory remains an important litigator's tool and a fundamental part of the process of selecting impartial juries, our increasing limitation of it gives me pause." *Id.* at 148. Justice O'Connor emphasized that "[l]imiting the accused's use of the peremptory is 'a serious misordering of our priorities,' for it means 'we have exalted the right of citizens to sit on juries over the rights of the criminal defendant, even though it is the defendant, not the jurors, who faces imprisonment or even death.'" *Id.* at 150 (quoting *Georgia v. McCollum*, 505 U.S. 42, 61-62 (1992) (Thomas, J., concurring)). *See also id.* at 162 (Scalia, J., dissenting) (arguing that the extension of *Batson* to gender and beyond will lead to "extensive collateral litigation" and the "lengthening of the *voir dire* process that already burdens trial courts").

"In the trial of a case the jury selection and voir dire examination are just as critical to the outcome as the presentation of evidence. . . . The change of a single juror in the composition of the jury could change the result." *Ter Keurst v. Miami Elevator Co.*, 486 So. 2d 547, 550-51 (Fla. 1986) (Adkins, J., dissenting). As part of that selection process, the right to exercise peremptory challenges serves several valid practical purposes: it allows litigants to secure a fair and impartial jury; it gives the parties some control over the jury selection process; it allows attorneys to search for biases during the selection process without fear of accepting a potential juror who may not display it overtly, or who may have been somehow offended during questioning; it allows attorneys to strike potential jurors who appear to not want to be there but have been unsuccessful in their attempts to be excused from service; and it serves as an insurance policy when a challenge for cause is denied by the judge and the challenging party still believes the juror will be unable to render a fair and impartial verdict.

In *Reed v. State*, 560 So. 2d 203, 206 (Fla. 1990), the Florida Supreme Court affirmed the peremptory challenge of an African-American juror, recognizing that "[o]nly one who is present at the trial can discern the nuances of the spoken word and the demeanor of those involved." Notably, the court reasoned that in future cases it would "rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a 'feel' for what is going on in the jury selection process." *Id.*

A year later, in *Green v. State*, 583 So. 2d 647, 651 (Fla. 1991), the court reminded trial judges that racially neutral reasons for peremptory challenges "need not rise to the level justifying challenges for cause," and again told them it was their responsibility to evaluate both the credibility of the reason asserted and the credibility of the person offering the reason

in determining whether a peremptory challenge was racially motivated. This is because trial judges are in the best possible position, although an imperfect one, to determine the credibility of the attorney seeking to support the challenge. *Id.* at 652. In fact, credibility is the key issue as to whether a trial court accepts or rejects a race neutral reason offered by the challenger. *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008).

The rules prohibiting the discriminatory use of peremptory challenges are intended to apply consistently to litigants in civil cases as well as criminal cases. *Compare McCollum*, 505 U.S. at 55 (finding that a criminal defendant's discriminatory use of peremptory challenges violated equal protection clause), *with Edmondson*, 500 U.S. at 629–31 (holding that civil litigants are prohibited from exercising racially discriminatory peremptory challenges), *and Batson*, 476 U.S. at 96 (outlining the standards by which the prosecution's use of race-based peremptory challenges may be deemed unconstitutional).

It has been said that "a lawyer's time and advice are his stock in trade," but so too are his or her experience and judgment. Successful trial attorneys understand that uncovering a juror's bias depends not only on skillful voir dire questioning, but also the ability to interpret body language, voice inflections, facial responses, and to draw upon knowledge gleaned from past experiences with an array of jurors.

Sometimes, prospective jurors will give an experienced attorney nothing more than a "bad vibe" that cannot be reduced to the record. Experienced trial lawyers develop gut feelings about jurors that are often difficult to articulate to a judge and may not rise to a level supporting a "for cause" strike. This does not mean that such an attorney is not being "genuine" regarding his or her reasons for exercising a "neutral" strike in the ordinary sense of the word; it simply means that our case law requires trial judges to accept or reject the proffered reason as a permissible use of the peremptory, often based on little more than their experience, judgment and intuition.

Although the goal of rooting out discriminatory conduct is laudable, court decisions over the years have had the adverse effect of depriving lawyers of the ability to use their own experience, judgment, and intuition in exercising challenges to select jury panels. What used to be purely discretionary challenges have now transformed into de facto challenges "for cause." For as it now stands, attorneys exercising a strike against *any* juror of any possible demographic are now compelled to provide a "neutral" reason for using a peremptory challenge. *See Abshire v. State*, 642 So. 2d 542, 543-44 (Fla. 1994) (women); *Guevara v. State*, 164 So. 3d 1254, 1256

4

(Fla. 2d DCA 2015) (men); *Whitby v. State*, 933 So. 2d 557, 563-64 (Fla 3d DCA 2006) (white males); *Olibrices v. State*, 929 So. 2d 1176, 1180 (Fla 4th DCA 2006) (Pakistani ethnicity and Muslim religious beliefs); *Joseph v. State*, 636 So. 2d 777, 780-81 (Fla. 3d DCA 1994) (Jews); *Fernandez v. State*, 639 So. 2d 658, 660 (Fla. 3d DCA 1994) (black males); *Alen v. State*, 596 So. 2d 1083, 1085 (Fla. 3d DCA 1992) (Hispanics). Putting aside the obvious problems inherent in protecting certain classes of persons and granting them a more favorable status for sitting on a jury over others; when everyone becomes a member of a protected class, then no one is.

As the Florida Supreme Court has recognized, "[i]t is the right to an impartial jury, not the right to peremptory challenge that is constitutionally protected." *Jefferson v. State*, 595 So. 2d 38, 41 (Fla. 1992) (footnote omitted). While peremptory strikes have undoubtedly been used by some in the past for discriminatory purposes, experience has shown that requests for "neutral" reasons are often made solely for the purposes of gamesmanship, and consequently, provide vehicles for obtaining new trials following unsatisfactory outcomes.

Those court decisions have eviscerated any presumption that a peremptory challenge may be exercised in a nondiscriminatory manner. When an objection is made, an on-the-record analysis must be applied to every challenge, without exception. Trial and appellate courts are then tasked with finding record support for the "genuineness" of any neutral reason proffered. Experienced trial attorneys know this may not always be possible to do in a manner that can be applied with consistency and reliability. An attorney might not be able to elicit adequate information from a prospective juror to sufficiently articulate a "neutral" reason for a strike that is acceptable to a trial judge, or an appellate court. And in attempting to establish an adequate record, the lawyer then risks posing intrusive questions to the subject jurors, potentially alienating that juror or others, as well as the risk that any attempt to strike an unfavorable prospective juror may be disallowed.

Ultimately, the failure to make a sufficient inquiry will probably lead to a reversal by the appellate court for failure to make a proper record. This has led to situations where attorneys are now using *Melbourne*[1] challenges in an attempt to keep certain jurors, lodging objections even though the proponent of the challenge does not truly believe the opposing side is being discriminatory. A judge may deny a challenge for that reason, but must nonetheless go to great lengths to articulate a rationale for rejecting such

---

[1] *Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996).

a challenge, or risk reversal when an appellate court deems his or her on-the-record inquiry or explanation inadequate.

This places both the trial lawyer and judge in a catch-22, making them more likely to err on the side of scrupulously interrogating prospective jurors about intimate, personal matters in an effort to elicit any justifiable reasons for striking them. Lawyers and judges must now take copious notes during voir dire, spend more time sifting through jurors' answers and deduce attorney motives to enunciate legally-recognized "neutral" reasons. As rightly predicted by Justice Scalia in *J.E.B.*, the result has been longer jury selections, causing longer trials in a justice system already burdened by expense and delay. 511 U.S. at 162 (Scalia, J., dissenting).

The ensuing progression of the current case law has resulted in the death of the peremptory challenge by a thousand cuts. I recognize that going back to a less-restrictive use of the peremptory challenge would probably require overturning years of legal precedent. However, trial courts should not be obligated to subjectively evaluate the hidden motives of attorneys exercising peremptory strikes or intuitively assess the seemingly endless permutations of alleged racial, gender, or religious-motivated strikes constantly proposed by litigants.

Therefore, because of the undue burden the current use of peremptory challenges places on courts, perhaps now is the time to change course. This can be accomplished by returning to a less-restrictive use of peremptory challenges as originally intended, or by formally codifying what has been effectively accomplished in practice – the elimination of the peremptory challenge altogether.[2]

* * *

***Not final until disposition of timely filed motion for rehearing.***

---

[2] In 1986, Justice Marshall proposed the complete elimination of peremptory challenges to remove discrimination from the jury selection process. *Batson*, 476 U.S. at 107 (Marshall, J., concurring). In doing so, he accurately predicted that future trial courts would be "ill equipped to second-guess" the reasons offered for such strikes by lawyers. *Id.* at 106. *See also* Vivien Toomey Montz & Craig Lee Montz, *The Peremptory Challenge: Should It Still Exist? An Examination of Federal and Florida Law*, 54 U. MIAMI L. REV. 451, 495 (2000).