DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN PACCHIANA,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D15-3340

[February 14, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. 08-3720CF10C.

Fred Haddad of Haddad & Navarro, PLLC, Fort Lauderdale, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Saber, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

In this case, the state and the trial court ratified the striking of a potential juror based not on her views, but merely because of her membership in a particular religious group. For this reason and for the reasons stated below, we reverse.

First, the trial court should not have found the state's reason for the strike to be genuine and race-neutral because the state did not question the juror regarding her religion before exercising the strike and, even after questioning, nothing in the record showed her religion would prevent her from being a fair and impartial juror. Second, even if the strike were genuinely based on the juror's religion, a member of a religion that is a cognizable class is protected from being struck from a jury based solely on her faith where there is no evidence that her faith would prevent her from being a fair and impartial juror. Third, striking a potential juror based entirely on her particular religious affiliation, without any evidence that her religion would prevent her from being fair

and impartial juror, is an impermissible "religious test" in violation of the United States and Florida Constitutions.

The state charged appellant and codefendants with first-degree murder and conspiracy to commit first-degree murder. After a joint trial, the jury found appellant guilty as charged. The trial court sentenced appellant to life imprisonment. Appellant raises several issues on appeal, including that the trial court erred in granting a peremptory strike of a prospective juror. Because we find this issue dispositive, we need not address the other issues.

A trial court's decision on whether a peremptory strike has been exercised in a racially discriminatory manner will be affirmed on appeal unless clearly erroneous. *Melbourne v. State*, 679 So. 2d 759, 764-65 (Fla. 1996).

During voir dire, the prospective juror at issue, who is black, completed a juror questionnaire answering questions concerning her occupation, previous juror experience, and the like. On that questionnaire, she listed her hobbies as "reading, witnessing a Jehovah Witness."

In response to the court's questioning during voir dire, the prospective juror stated that she had worked in customer service, that she was not currently working, and that she wanted to serve on the jury. She was previously on a civil jury that reached a verdict for the plaintiff. She had been the victim of a burglary and her brother was in jail for armed robbery, but that would not impact her ability to be fair and impartial in this case. She confirmed that she was able to serve, that she wanted to serve, and that she would do a good job as a juror.

The prospective juror agreed with various hypotheticals presented by the prosecutor, acknowledging that it was reasonable to conclude that a "pen is a pen" by looking at it and that one can tell what a puzzle is a picture of from 90 pieces out of 100. She also agreed that a description of a woman in a white flowing gown and a man with a smile on his face was a description of a wedding and not a funeral. When the prosecutor asked how the state proves its case, she answered "in documentation from another professional." She confirmed she understood that the burden of proof was with the state. She agreed that based on new information from one witness, she might disbelieve the testimony of a previous witness. She also agreed that it is natural to begin deciding whether someone is believable while that person is testifying. When

2

defense counsel asked whether first impressions are correct, she responded, "Sometimes, sometimes not."

The fact that this case involved guns did not cause any issues for her. No one in her house owned or possessed a handgun, nor had she ever shot a handgun. None of her family or close friends had ever been a victim of handgun violence. When asked if she could envision a situation where a person may legally and lawfully shoot someone who is unarmed, she answered "yes."

During jury selection, the state used a peremptory challenge to strike the prospective juror. The following then transpired:

> [DEFENSE COUNSEL]: Can we get a race neutral reason?
>
> [THE STATE]: **She's a Jehovah Witness. I've never had one say, and I highlighted it, they've always said they can't sit in judgment. She never brought it up.**
>
> [DEFENSE COUNSEL]: She did.
>
> [THE STATE]: No, but she put at the bottom that she's a Jehovah Witness, that gives me pause.
>
> [DEFENSE COUNSEL FOR CO-DEFENDANT]: That's a religious based strike.
>
> [THE STATE]: You can say that but that's—for 20 years, [defense counsel for co-defendant] knows, any one of them that's been practicing they've always said that. Now maybe she's less—
>
> [DEFENSE COUNSEL FOR CO-DEFENDANT]: She reads Jehovah stuff, she doesn't say she's a practicing Jehovah Witness.
>
> THE COURT: Let's bring in [the prospective juror].
> . . . .
>
> [Prospective juror], if you wouldn't mind having a seat in the front row, we have a question I want to ask you. You indicated in your questionnaire that you're a Witness, Jehovah Witness.

[PROSPECTIVE JUROR]: Yes.

THE COURT: How would that affect your ability to be fair in this case? We've had them before. Do you have any religious beliefs that would prevent you from being fair and impartial in this case?

[PROSPECTIVE JUROR]: If the evidence that's provided to me is clear cut and concise I would be able to. If my ruling wouldn't—

THE COURT: In light of my questions, [prosecutor]?

[THE STATE]: So there's no prohibition, and honestly I don't know enough about religion, and I don't mean that disrespectfully, but I want to make sure that you as an individual, whatever your beliefs are, there's nothing preventing you from sitting in judgment of a case, because that's really what you're doing, you're judging whether we've proven our case or not. You can do that?

[PROSPECTIVE JUROR]: I can, and before I believe it was Judge Levenson who said that we would not be making the sentencing.

THE COURT: How do you feel about that?

[PROSPECTIVE JUROR]: I'm okay with that.

THE COURT: Okay.

[THE STATE]: The fact that you said that, if you were involved – I'm taking it to mean, and maybe I'm wrong, if you're involved in sentencing then you are saying you wouldn't be sitting?

[PROSPECTIVE JUROR]: Then I would say no.

[THE STATE]: You realize your decision here if, in fact, you're to vote –

[DEFENSE COUNSEL FOR CO-DEFENDANT]: I object to any further questions with this juror.

4

THE COURT: Overruled.

[THE STATE]: If, in fact, you know, you vote that it's proven, you have nothing to do with sentencing but the Judge would based on your decision saying it's proven.

[PROSPECTIVE JUROR]: If the State gives me all the evidence that I can see where you can show me that these individuals did this act, then I—can make a decision on that and based on the decision that you provide me.

[THE STATE]: Well, we don't provide you with a decision.

[PROSPECTIVE JUROR]: Well, the evidence that I'm given.

[THE STATE]: Yes, ma'am.  You said all the evidence. **You can do that beyond a reasonable doubt?**

[PROSPECTIVE JUROR]: **Yes.**

[THE STATE]: The reason.  I'm asking, I want to make sure—whatever the Judge says the law is—

[PROSPECTIVE JUROR]: Right.

[THE STATE]: Okay.

THE COURT: Any questions from the Defense?

[DEFENSE COUNSEL FOR CO-DEFENDANT]: None.

. . . .

THE COURT: Thank you, ma'am.  Record reflect that the juror's [sic] have left the courtroom and the door is closed. What say you, [prosecutor]?

[THE STATE]: My reason is unchanged, I don't believe I can meet her burden.  I can meet my burden beyond a reasonable doubt but I cannot meet her burden and that's a concern to me and it has nothing to do with religion or anything else.

5

THE COURT: Let me hear from the Defense.

[DEFENSE COUNSEL]: We object to her being challenged for cause, then he's going to have to come up with a race neutral reason.

[THE STATE]: This is a peremptory.

THE COURT: Over the Defense objection I find that the record sufficiently supports a race neutral reason because of the concern about her responses to the questions. So over your objection it'll be granted.

[DEFENSE COUNSEL]: You need to, I think the law requires you to put on the record what the race and reason is.

THE COURT: Well, he—

[THE STATE]: I believe I did that.

THE COURT: Tell me.

[DEFENSE COUNSEL FOR CO-DEFENDANT]: If the Court is making the ruling—so the Court has already made the statement, you find a race neutral reason. We're asking the Court to follow the law and to tell us what that race neutral reason is that's already affected your decision, that's all.

THE COURT: Okay, that's fair enough. **Listen, she's a Jehovah Witness**, I think there was some discussion about her and the issue of the sentencing part of it, she did waiver [sic] along the way there.

Look, if it were me making a decision, me perceiving it differently, but out of deference to the person who is the moving party, as long as there's some reason, or suggestion based on her responses and overall nature of her—and plus I think alternatively, additionally I want to point out I know it's a blind record but there's a number of other African Americans on the jury, I think that based on the totality of the circumstances I think it rises to the legal of a non based reason. I understand your point though, it is well taken. Do you want to respond?

6

[DEFENSE COUNSEL FOR CO-DEFENDANT]: Yes, we move to strike the panel.

THE COURT: Based on?

[DEFENSE COUNSEL FOR CO-DEFENDANT]: Based on the Court depriving us of a juror that we think should be seated.

[DEFENSE COUNSEL FOR CO-DEFENDANT]: We all join in, of course.

THE COURT: Yes, it'll be a joint motion. I think we talked about that before, [defense counsel for co-defendant].

[DEFENSE COUNSEL FOR CO-DEFENDANT]: I wanted to clarify it one last time.

[DEFENSE COUNSEL]: Especially because we think this is going to be a key appellant [sic] issue, so I want to make sure we're all in.

THE COURT: Everybody's in, all right. . . .

. . . .

THE COURT: Do you understand who the panel is? Go over the panel one more time, I'm going to highlight it now. . . . Noted for the record that there was an objection to [the prospective juror], [the prospective juror] was objected to that's why you're not tendering the panel.

(emphasis added).

After voir dire but before the jury was sworn, appellant filed a written motion for mistrial and to select a new jury. At a hearing on the motion, the following transpired:

THE COURT: I do want to say that it was late in the day and you had asked me or arguably confronted me with making a record as to why I was doing what I was doing, and it was late in the day for everybody, so I'm not casting aspersions. The case that you cited, [defense counsel], the

7

Davis case, out of the Supreme Court of Minnesota, really says it well in terms of [the prosecutor's] basis. It says here, "In my experience, that faith is very integral to their daily life in many ways that many Christians are not, that was reinforced by at least three times a week he goes to church," blah, blah, blah, talking about Jehovah witnesses. **Jehovah Witnesses are peculiar, and many of them in my experience have said they cannot judge, that God judges, and based on that I find that to be a genuine non-race-based reason.** In fact, in that, in that case, in the Davis case, the defense actually conceded that. We'll get to your next issue, but I'm just making a record as to that. **So, the fact that she says, the juror says, that she's a Jehovah Witness, notwithstanding the fact that she says she can still be fair and impartial, he says, "You know what, I don't feel comfortable with the fact that she has that religion."**

It's sort of analogous if we had an African-American FBI agent who was on the panel and said, "I can be fair and impartial, I can assess police officers just as well as anyone else," but you strike him anyway. So, I think they're pretty analogous.

**A Jehovah Witness, that as a religion, it would almost be malpractice for a prosecutor to let someone on the jury like that.**

. . . .

[THE STATE]: . . . [T]he only thing that I would add is the timeliness, a contemporaneous objection. As you have framed it and [defense counsel] framed it correctly, his challenge was a race neutral reason.

My reasoning had nothing to do with race, Jehovah's Witnesses can be White, they can be Black, they can be Asian, Hispanic, whatever the ethnicity is, and that's the finding the Court made. This motion is untimely. I know he's trying to make his record contemporaneous to it, the separate objection, not the race-based reason, but a religious-based, he states it well in the motion, it speaks for itself, the basis for that. So, that's the only thing I would add, that it's untimely.

. . . .

THE COURT: . . . . The other thing I want to point out to you, not to get technical here, [defense counsel], but you did file a motion for mistrial, the jury's [sic] haven't been sworn.

[THE STATE]: Right.

THE COURT: So, it really should be a motion to strike the jurors. I think the argument is an interesting argument. I think you concede, the excellent professional lawyer that you are, that this is a first impression type issue.

[DEFENSE COUNSEL]: Right.

THE COURT: You want to extend Batson, which the Supreme Court has not done.

[DEFENSE COUNSEL]: Absolutely.

THE COURT: I'm going to exercise my discretion and deny that request. However, all of your objections are duly noted and preserved at this time.

(emphasis added).

"Preservation of an objection to the use of a peremptory strike requires more than one objection: an objection to initiate a *Melbourne* inquiry and another objection before the jury is sworn in." *Denis v. State*, 137 So. 3d 583, 585 (Fla. 4th DCA 2014). Additionally, "if the proponent of the peremptory strike proffers a facially race-neutral reason for the strike during step 2 of the *Melbourne* procedure, the party objecting to the strike must preserve the issue by putting the court on notice that he or she contests the factual assertions on which the strike is based." *Id.*

In this case, the issue is preserved because defense counsel objected to the peremptory strike by asking for a race-neutral reason. *See Foster v. State*, 767 So. 2d 525, 528 (Fla. 4th DCA 2000). Additionally, the trial court noted the defense did not tender the jury because of the objection to the strike of the prospective juror. Because the state's proffered reason of religion was not a facially race-neutral reason sufficient to rebut the prima facie case of racial bias, appellant did not need to do

9

anything more to preserve the issue. *See id.*; *State v. Davis*, 504 N.W. 2d 767, 772 (Minn. 1993) (stating that striking a black juror because he was a Jehovah's Witness would not rebut the prima facie case of racial bias).

Regardless, even though it was not required, the defense did put the court on notice that it was objecting to the legitimacy of the reason given by the state for the strike. Specifically, in response to the state's proffered reason that the prospective juror was a Jehovah's Witness, counsel for one of the co-defendants stated, "That's a religious based strike." The fact that this objection was made by counsel for a co-defendant rather than appellant's defense counsel is of no importance. The purpose of the rule requiring a timely contemporaneous objection is to "place the trial judge on notice that error may have been committed, and provide him an opportunity to correct it at an early stage of the proceedings." *Harrell v. State*, 894 So. 2d 935, 940 (Fla. 2005). The objection by the co-defendant's counsel achieved the objective of this rule. The court clearly understood the alleged error and brought the prospective juror in for further questioning.

Additionally, after the state announced that its proffered reason remained unchanged upon questioning the juror regarding her religion, appellant's counsel objected that the state failed to provide a race-neutral reason, again putting the court on notice that religion was not a legitimate reason. After the trial court allowed the strike, counsel for a co-defendant moved to strike the panel based on the court's exclusion of the prospective juror. All of the defense attorneys joined the motion, including appellant's counsel, who stated, "Especially because we think this is going to be a key appellant [sic] issue, so I want to make sure we're all in." The trial court confirmed, "Everybody's in, all right."

Further, after voir dire and before the jury was sworn, appellant filed a written motion, yet again objecting to the striking of the juror based on her religion and requesting a new jury. The trial court denied the request but noted that "all of your objections are duly noted and preserved at this time."

From this record, there can be no doubt the trial court was on notice and fully understood that appellant, as well as his codefendants, objected to the strike, the reason given by the state for the strike, and the trial court's acceptance of that reason as genuine. Therefore, this issue is preserved.

### I. *Improper Race-Based Strike*

10

As the United States Supreme Court has stated, "[r]acial discrimination in selection of jurors harms not only the accused" but also "unconstitutionally discriminate[s] against the excluded juror." *Batson v. Kentucky*, 476 U.S. 79, 87 (1986). "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community." *Id.*

In Florida, the *Neil-Slappy* line of cases sets out a procedure to determine if a preemptory challenge is racially-motivated. Step 2 of this analysis requires the proponent of the strike to articulate a "'clear and reasonably specific' racially neutral explanation of 'legitimate reasons' for the [strike]." *Melbourne*, 679 So. 2d at 763 (citation omitted) (alteration in original). In Step 3, the trial court determines the genuineness of the strike. *Id.* at 764.

In this case, the state did not provide a "legitimate" race-neutral reason as required under *Melbourne*. During voir dire, the potential juror stated that she would follow the law and gave no indication that she would allow her status as a Jehovah's Witness to affect her decision-making at all. In moving to strike her, the state merely relied on the juror's membership in a religion without any testimony that it would actually affect her service as a juror, speculating that "any" practicing Jehovah's Witness would refuse to sit in judgment of others. In fact, the state moved to strike the juror before even questioning her about her religion and without determining whether she shared any alleged "group bias" that would potentially prevent her from being an unbiased juror.

We often look to whether the juror was questioned, in detail or at all, to determine the genuineness of a claimed race-neutral strike. In the absence of questioning regarding the juror's adherence to any claimed group bias, then the genuineness of the strike can be called into doubt. *Landis v. State*, 143 So. 3d 974, 979 (Fla. 4th DCA 2014).

In *Landis*, the state, when asked for a race-neutral reason for a peremptory strike, proffered that the juror worked in the restaurant industry where drugs run rampant. However, the state had not questioned the juror regarding his occupation or what effect it might have on his ability to serve as a juror. Given this record, "the trial court's determination of the genuineness of the strike lacked sufficient grounds and was clearly erroneous." *Id.* at 980.

In attempting to distinguish *Landis*, the concurrence misapprehends the purpose for which *Landis* is cited. *Landis* is cited for the proposition that the failure to question a juror about the proffered reason for the

11

strike casts doubt on the genuineness of the strike. That is not to stay that religion can never be a race-neutral reason for a strike. Rather, because the state never even inquired about the juror's religion in this case, it obviously was not a concern to the state and not a genuine basis for the strike.

This point is further illustrated by *Frazier v. State*, 899 So. 2d 1169 (Fla. 4th DCA 2005). In that case, the state struck a black juror because she was an immigrant from Jamaica, a country known for drug trafficking. However, "the prosecutor made no attempts to question [the juror] about her familiarity and experiences, if any, with drug trafficking in Jamaica. Rather, the prosecutor's challenge rested on stereotypical assumptions about Jamaicans." *Id.* at 1175. In finding the state did not provide a race/ethnic-neutral reason for the strike, this court stated that "[a] policy of striking all jurors who originate from a country inhabited by a distinct racial or ethnic group, without regard to the particular circumstances of the trial or the individual responses of the jurors, is inherently discriminatory." *Id.*

Here, the state's race-neutral explanation based on the prosecutor's "20 years" of experience is no different than the discriminatory stereotyping that we disallowed in *Frazier*. *See also Cobb v. State*, 825 So. 2d 1080, 1084 (Fla. 4th DCA 2002) ("Florida courts have often invalidated a peremptory challenge as a pretext where the excused juror was not questioned and shown to share the alleged group bias."); *Haile v. State*, 672 So. 2d 555, 556 (Fla. 2d DCA 1996) (holding trial court erred in accepting state's strike of African American juror because she read Bible without conducting further inquiry; "this court cannot conclude, without evidence related to the facts of the case, that the reading of the Bible, a practice embraced by a significant percentage of the American public, would render that portion of the population inherently partial.").

The case of *Davis* is also instructive. 504 N.W. 2d 767. In that case, the Minnesota Supreme Court chose not to extend the *Batson* bar on race discrimination to peremptory strikes on the basis of religion. Yet even the *Davis* court noted:

> If the prosecutor had said no more than she was striking the black juror because he was a Jehovah's Witness, we think this would not have rebutted the prima facie case of racial bias, anymore than if the prosecutor had said she was striking because the black juror was a Lutheran, a Baptist, or a Muslim.

12

*Id.* at 772. In the present case, as in *Davis*, the state relied on the fact that the juror was a Jehovah's Witness, and this also would not "rebut[] the prima facie case of racial bias" alleged. *See id.*

Here, the juror was not questioned about her religious views until after the state made its preemptory strike, thus calling its genuineness into question. Moreover, even after questioning the prospective juror about her religion, there was a complete lack of evidence that her religion would influence her decision-making as a juror. In fact, the juror unequivocally stated she would follow the evidentiary standard beyond a reasonable doubt and none of her responses during voir dire gave any reason to doubt this statement.

Further, after the trial court determined that being a Jehovah's Witness was a race-neutral reason to strike the juror from the panel and that she wavered on sentencing, the court opined that "a Jehovah Witness, that as a religion, it would almost be malpractice for a prosecutor to let someone on the jury like that." These statements support the argument that it was not the juror's answers, but rather her mere religious affiliation, that caused her to be struck from the panel.

The dissent's reliance on certain statements by the prospective juror does not rebut the conclusion that the strike was based on an impermissible reason. Although the prospective juror stated that the evidence should be "clear cut and concise," this layman's statement was made after the initial questioning and after the state's exercise of the peremptory strike, so it obviously could not have been the basis of the state's strike. Additionally, after making this statement, and in response to the state's questioning, the juror confirmed that she would apply the reasonable doubt standard. Thus, even if the statement had been made before the strike, the juror's subsequent acknowledgement of the proper standard should have removed any concern about her ability to follow the law.

The dissent also relies on the juror's statement that she had been the victim of a burglary and that her brother was in jail, but that neither of these circumstances would affect her ability to be fair and impartial in this case. The dissent is correct that a juror's claim of impartiality is not always dispositive. However, neither the state nor the trial court relied on the juror's status as a burglary victim or her brother's imprisonment as justification for the peremptory strike. Even the dissent concedes that these grounds were not "expressed by the trial court." Therefore, the dissent's reliance on *Cunningham v. State*, 838 So. 2d 627, 630 (Fla. 5th

13

DCA 2003), and *Peters v. State*, 874 So. 2d 677, 679 (Fla. 4th DCA 2004), is misplaced.

The dissent further relies on the trial court's statement that the juror wavered with respect to sentencing. However, the state did not advance this reason as a basis for its peremptory strike. *See Floyd v. State*, 569 So. 2d 1225, 1229 (Fla. 1990) ("It is the state's obligation to advance a facially race-neutral reason that is supported in the record."). Moreover, the record does not support a finding that the prospective juror wavered. *See id.* In response to the court's questioning, the juror stated that the jury "would not be making the sentencing" and that she was "okay with that." The state itself advised the juror that "[i]f, in fact, you know, you vote that it's proven, you have nothing to do with sentencing but the Judge would based [sic] on your decision saying it's proven." Further, jurors are instructed not to consider sentencing during the penalty phase of trial, and "it is presumed that jurors will, in good faith, follow the law as it is explained to them." *Hurst v. State*, 202 So. 3d 40, 63 (Fla. 2016).

Although the trial court noted that "there's a number of other African Americans on the jury," "[t]he relevant issue in this inquiry is whether *any* juror has been excused because of his or her race, independent of any other juror." *State v. Johans*, 613 So. 2d 1319, 1321 (Fla. 1993) (citing *State v. Slappy*, 522 So. 2d 18, 21 (Fla. 1988)). "A race-neutral justification for a peremptory challenge cannot be inferred merely from circumstances such as the composition of the venire or the jurors ultimately seated." *Id.* "[T]he striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors." *Slappy*, 522 So. 2d at 21 (citation omitted).

## II. *Improper Religion-Based Strike*

Even if the state's strike were "genuinely" based on the juror's religion, members of a religion that is a cognizable class are also protected under the United States and Florida Constitutions from being systematically struck from juries solely based on their faith. Appellant has a right to a fair and impartial jury panel where the state does not exclude members of a religion in the absence of competent substantial evidence that the potential juror cannot be fair and impartial due to her views related to her membership in that religion.

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court held that the Equal Protection Clause prohibits race-based peremptory challenges. Over the years, courts have expanded *Batson* to

other peremptory challenges based on the Equal Protection Clause. The United States Supreme Court extended the equal protection analysis to gender in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994).[1]

Similarly, the Florida Supreme Court previously found that Hispanics were a "cognizable class" of people, requiring an ethnic-neutral reason before excusing a juror. *State v. Alen*, 616 So. 2d 452, 454 (Fla. 1993). That court applied a two-part test to determine if a group constitutes a cognizable class: whether the group's population is large enough to be recognized as an identifiable group and whether that group has internal group cohesiveness. *Id.*

The Third District, following the same line of cases, held that a preemptory challenge of a Jewish venireperson based solely upon her religion was unconstitutional. *Joseph v. State*, 636 So. 2d 777 (Fla. 3d DCA 1994). The court found that members of the Jewish religion were a cognizable class under the standard articulated in *Alen*. The *Joseph* court determined that members of the Jewish faith met the two-prong test and concluded that striking members of the Jewish faith violated Article 1, Section 16 of the Florida Constitution, which guarantees the defendant an impartial jury. *Id.* at 781.

In the present case, as in *Joseph*, members of the Jehovah's Witnesses would also appear to meet the two-prong test as a recognizable group with internal group cohesiveness. *See also State v. Gilmore*, 511 A.2d 1150, 1159 n.3 (1986) ("[A]t minimum, cognizable groups include those defined on the basis of religious principles, race, color, ancestry, national origin, and sex (all of which are suspect or semi-suspect classifications triggering strict or intermediate scrutiny under federal equal protection analysis[.])") (citing *Cleburne v. Cleburne Living Centers*, 473 U.S. 3249 (1985)).

This court has also found that striking a potential juror due to his or her religious faith is unconstitutional. In *Olibrices v. State*, 929 So. 2d 1176, 1180 (Fla. 4th DCA 2006), our court found that the potential juror's "membership within the objectively discernible group of Pakistani Muslims" was the basis of the exercise of a peremptory challenge. We

---

[1] The dissent quotes from Justice O'Connor's concurring opinion in *J.E.B.*, wherein she expressed concern about "[l]imiting the accused's use of the peremptory challenge." *Id.* at 150. However, the instant case involves a peremptory challenge by the state. *J.E.B.* stands for protecting the right of the defendant to use a peremptory challenge to safeguard the right to a fair trial, not for the state to exclude a discernable class of people.

concluded that "whether the juror was challenged because he is of Pakistani origin or because his religious belief is Muslim, it would be a *Neil Slappy* violation to exercise a peremptory challenge of him on either account." *Id.* Similarly, in the present case, the potential juror is a member of an "objectively discernible group," that being the Jehovah's Witnesses.

*Rodriguez v. State*, 826 So. 2d 494 (Fla. 4th DCA 2002), and *Happ v. State*, 596 So. 2d 991 (Fla. 1992), which are cited by the dissent, are distinguishable. The peremptory strike in *Rodriguez* was based on the prospective juror's occupation and not based on membership in a particular religious group. 826 So. 2d at 495. *Happ* is also distinguishable because in that case, unlike in the instant case, the defendant did not contest the reasons given by the state for the strike. 596 So. 2d at 996.

The dissent also relies on the trial court's superior vantage point as justification for affirmance. Although it is generally true that we should rely on the superior vantage point of the trial court, that axiom does not hold true where the trial court has ratified the state's erroneous and unconstitutional strike of a prospective juror based on religious membership alone. *See Frazier*, 899 So. 2d at 1175 ("When stereotypical presumptions are based on a juror's nationality or ancestral home and proffered as a reason for a peremptory strike, discrimination in jury selection has occurred as a matter of law."); *Foster v. State*, 929 So. 2d 524, 537 (Fla. 2006) (stating that deference to a trial court's superior vantage point applies only if its decision is supported by competent substantial evidence).

Other jurisdictions have also declared invalid strikes based on religious affiliation. For instance, in *State v. Hodge*, 726 A.2d 531, 550 (Conn. 1999), the Connecticut Supreme Court held that "a peremptory challenge based on a venireperson's religious affiliation is unconstitutional." The court explained that "[a]lthough one's religious *beliefs* may render a prospective juror unsuitable for service in a particular case, one's religious *affiliation*, like one's race or gender, bears no relation to that person's ability to serve as a juror." *Id.* at 553.

Although those who argue against extending *Batson* often cite to *Davis*, as noted above, the Minnesota Supreme Court actually recognized that striking a juror based solely on his affiliation with the Jehovah's Witnesses would not rebut the prima facie case of racial bias. *See Davis*, 504 N.W. 2d at 772. This is the exact situation presented in the instant case.

Interestingly, although the United States Supreme Court denied the petition for review by certiorari in *Davis*, Justice Thomas, joined by Justice Scalia, dissented from the denial of certiorari. *Davis v. Minnesota*, 511 U.S. 1115 (1994). Justice Thomas, citing to *J.E.B.*, disputed the Minnesota Supreme Court's conclusion that "*Batson's* equal protection analysis applies solely to racially based peremptory strikes." *Id.* at 2121. Responding to the majority's denial of the writ for certiorari, the dissent stated:

> Indeed, given the Court's rationale in *J.E.B.*, no principled reason immediately appears for declining to apply *Batson* to any strike based on a classification that is accorded heightened scrutiny under the Equal Protection Clause. . . . *J.E.B.* would seem to have extended *Batson's* equal protection analysis to all strikes based on the latter category of classifications-a category which presumably would include classifications based on religion.

*Id.*

Justice Thomas correctly suggested that the rationale of *Batson* and *J.E.B.* should be extended. Based on *Alen, Joseph,* and this court's decision in *Olbrices*, the trial court clearly erred in allowing the prospective juror to be struck from service based on her membership in a religious group.

Thus, the state's strike was either pretextual and entirely based on race, or the state's strike was not pretextual and entirely based on religion despite the lack of competent substantial evidence that the prospective juror's religion would influence her decision-making as a juror. Either way, it violates the United States and Florida Constitutions.

## III. *Strike Violates "Religious Test"*

Finally, striking a potential juror from jury service based solely on membership in a religion, no matter what the juror says during voir dire, is an impermissible "religious test" in violation of the United States and Florida Constitutions. Where the state decides to strike the juror due to her faith, even before discussing whether her faith would improperly influence her decision, it becomes the state's de facto position that a member of that religion can never satisfy the state's concerns and effectively can never serve on a jury. Likewise, the trial court's statement—that allowing a Jehovah's Witness on a jury would be

"malpractice"—effectively prohibits members of that religious group from being able to serve as a juror.

Article VI, Clause 3 of the United States Constitution states that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." The United States Supreme Court stated that "[w]e repeat and again reaffirm that neither a state nor the Federal Government can constitutionally force a person 'to profess a belief or disbelief in any religion.'" *Torcaso v. Watkins*, 367 U.S. 488, 495 (1961) (citation omitted). To strike a juror for professing a belief in a religion amounts effectively to a religious test. *See also* Fla. Const. art. I, § 2 ("Basic rights.—. . . No person shall be deprived of any right because of race, religion, national origin, or physical disability."); Fla. Const. art I, § 3 "Religious freedom.— . . . There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof.").

The United States Supreme Court has recognized that jury duty is a public trust:

> [The jury is] an entity that is a quintessential governmental body, having no attributes of a private actor. The jury exercises the power of the court and of the government that confers the court's jurisdiction. . . . [T]he jury system performs the critical governmental functions of guarding the rights of litigants and ensuring the continued acceptance of the laws by all of the people.

*Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 624 (1991). (citation, quotation mark, and alterations omitted). Every person, regardless of his or her religion, should be eligible to serve in this public trust.

Another state that has adopted the rule prohibiting peremptory strikes based on religious affiliation has also found this type of strike violates the religious test doctrine:

> Furthermore, to allow the State to use peremptory strikes based on religious affiliation would condition the right to free exercise of religion upon a relinquishment of the right to jury service. *See McDaniel v. Paty*, 435 U.S. 618, 626-29 (1978) (invalidating a law that disqualified members of the clergy from holding certain public offices, because it imposed special disabilities on the basis of religious status); *Powers v.*

18

*Ohio*, 499 U.S. 400, 406-07 (1991) (recognizing the right to serve on a jury as an important democratic right). As the Court stated in *Georgia v. McCollum*, 505 U.S. 42, 59 (1992), "[i]n our heterogeneous society policy as well as constitutional considerations militate against the divisive assumption-as a per se rule-that justice in a court of law may turn upon the pigmentation of skin, the accident of birth, or the *choice of religion.*" *Quoting Ristaino v. Ross*, 424 U.S. 589, 596 n.8 (1976) (emphasis added).

*State v. Purcell*, 18 P.3d 113, 121-22 (Ariz. Ct. App. 2001).

The framework of our constitutional freedom is based in large part on the protection of the free exercise of religion. Religious liberty can be safeguarded only when every individual can participate in our civil society regardless of his or her religion. Serving as a juror is one of the highest forms of participation.

Our founders understood that religious tests were inimical to the rights of the individual within a free society:

> More sparingly should this praise be allowed to a government, where a man's religious rights are violated by penalties, or fettered by tests, or taxed by a hierarchy. Conscience is the most sacred of all property; other property depending in part on positive law, the exercise of that, being a natural and unalienable right. To guard a man's house as his castle, to pay public and enforce private debts with the most exact faith, can give no title to invade a man's conscience which is more sacred than his castle, or to withhold from it that debt of protection, for which the public faith is pledged, by the very nature and original conditions of the social pact.

James Madison, *Property*, National Gazette, March 27, 1792, available at https://founders.archives.gov/documents/Madison/01-14-02-0238.

In sum, the strike was pretextual and based on race. Even if the strike was not a pretext, then it was based on religion, which is also impermissible. Finally, the strike imposed an unconstitutional religious test.

For all of these reasons articulated above, we reverse and remand for a new trial.

*Reversed and remanded.*

GERBER, C.J., concurs in part and dissents in part with opinion.
MAY, J., dissents with opinion.

GERBER, C.J., specially concurring in part and dissenting in part.

I concur with Judge Levine to reverse the defendant's conviction and remand for a new trial. Although I concur with most of my colleague's well-researched and well-written opinion, I write separately because I respectfully disagree with his opinion in two respects:

1. In my opinion, the defendant did not preserve his religion-based objection during the initial discussion over the prospective juror. The defendant only preserved his religion-based objection through his later-filed motion for mistrial and to select a new jury, which he filed before the jury was sworn.

2. In my opinion, to the extent the state used a religion-based reason to oppose the defendant's race-based objection, such a religion-based reason was both facially race-neutral (because religion and race are obviously two different things facially) and genuinely race-neutral (because the defendant did not satisfy his burden of persuasion to show that the state was using its religion-based reason as a pretext to strike the prospective juror because of her race). Thus, the trial court properly overruled the defendant's race-based objection. However, to the extent the defendant ultimately raised a religion-based objection through his motion for mistrial and select a new jury, I agree with Judge Levine that the trial court erred in overruling the defendant's religion-based objection based on the prospective juror's answers to the questions posed to her.

I address each point in turn more fully below.

### 1. *Preservation*

The defendant did not preserve his religion-based objection during the initial discussion over the prospective juror. The defendant's initial objection could not have been clearer that it was based on only the prospective juror's race: "Can we get a race neutral reason?"

20

Upon the state's response, "She's a Jehovah's Witness," the fact that the co-defendant's counsel then stated "That's a religious based strike" did not automatically transform the defendant's race-based objection into a religion-based objection. At best, the co-defendant's counsel's comment was ambiguous. Was the co-defendant's counsel raising a second objection based on religion? Or was the co-defendant's counsel simply commenting on the state's proffered race-neutral reason for the peremptory strike?

Based on this record, the latter seems more likely. Unlike the defendant's counsel's clear initial objection, "Can we get a race neutral reason?", at no point did either the defendant's counsel or the co-defendant's counsel follow up with a similarly clear "Can we get a religion-neutral reason?" In fact, after the court brought in the prospective juror for further questioning, the record reflects that: (1) both the defendant's counsel and the co-defendant's counsel pursued only a race-based objection; and (2) the court understood the objection to have raised only a race-based objection:

> [DEFENSE COUNSEL]: We object to her being challenged for cause, then he's going to have to come up with a **race neutral reason**.
>
> [THE STATE]: This is a peremptory.
>
> THE COURT: Over the Defense objection I find that the record sufficiently supports a **race neutral reason** because of the concern about her responses to the questions. So over [the defense] objection [the state's peremptory strike will] be granted.
>
> [DEFENSE COUNSEL]: You need to, I think the law requires you to put on the record **what the race and reason is**.
>
> THE COURT: Well, he —
>
> [THE STATE]: I believe I did that.
>
> THE COURT: Tell me.
>
> [CO-DEFENDANT'S COUNSEL]: If the Court is making the ruling—so the Court has already made the statement, **you find a race neutral reason**. We're asking the Court to follow

21

the law and to tell us what that **race neutral reason** is that's already affected your decision, that's all.

(emphasis added).

I recognize that my colleague Judge May, in her articulate dissent below, agrees with Judge Levine that the co-defendant's counsel's statement, "That's a religious based strike," when added to the ensuing discussion regarding the prospective juror's religion, amounted to preserving the defendant's religion-based objection. Respectfully, I disagree with both of my colleagues. Although the defendant ultimately preserved his religion-based objection through his later-filed motion for mistrial and to select a new jury, which he filed before the jury was sworn, the portion of the record which I have quoted above clearly demonstrates that the defendant did not preserve his religion-based objection until he filed that motion later.

## 2. *Using a Religion-Based Reason to Oppose a Race-Based Objection*

The other issue on which Judge Levine and I differ is his conclusion in Part I of his opinion that the state improperly used its religion-based reason to oppose the defendant's race-based objection. In my opinion, such a religion-based reason was both facially race-neutral (because religion and race are obviously two different things facially) and genuinely race-neutral (because the defendant did not satisfy his burden of persuasion to show that the state was using its religion-based reason as a pretext to strike the prospective juror because of her race). Thus, the trial court properly overruled the defendant's race-based objection.

Judge Levine's conclusion relies in part on our opinion in *Landis v. State*, 143 So. 3d 974 (Fla. 4th DCA 2014). However, *Landis* is distinguishable.

In *Landis*, the defendant was charged with trafficking in cocaine. 143 So. 3d at 976. The trial court had asked the prospective jurors to answer a questionnaire including their occupation. *Id.* The prospective juror at issue, whom the trial court later would describe as either African-American, Indian, or "Island," identified his occupation as a kitchen manager. *Id.* Although the state and the defense questioned the remainder of the panel, neither the state nor the defense posed any questions to this prospective juror inquiring about his experience or his ability to be fair and impartial. *Id.*

When the state requested a peremptory strike of this prospective juror, the defense objected and requested a race-neutral reason for the strike. *Id.* The state responded: "Judge, he's a kitchen manager. *Although that means nothing to your honor or counsel.* I worked in a restaurant a lot. A lot of personal drugs run rampant. I don't want a person like that on my jury panel." *Id.* (emphasis added).

After the state provided this explanation, the trial court stated, "The reason you offered is genuine and I will allow your strike." *Id.* In accepting the state's argument, the trial court simply noted that, just as some attorneys have an aversion to accepting teachers on juries, it is permissible to use a discretionary strike on a juror solely on the basis of their employment within an industry that allegedly has a high rate of drug use. *Id.* at 978. Thereafter, another prospective juror, a white male who informed the court that he managed several family owned restaurants, was accepted as an alternate without objection. *Id.* at 976.

On appeal, the defendant argued that the trial court erred by failing to make a suitable finding that the proffered race-neutral reason for the strike was genuine. *Id.* at 977. We agreed with the defendant and reversed. *Id.* at 978. We reasoned, in pertinent part:

> On this record, it does not appear that the trial court performed a legally sufficient genuineness analysis, stating only that it "found [the State's reason] to be genuine and not pretextual." In accepting the State's argument, the trial court simply noted that, just as some attorneys have an aversion to accepting teachers on juries, it is permissible to use a discretionary strike on a juror solely on the basis of their employment within an industry that allegedly has a high rate of drug use. This alone is insufficient to show that the trial court properly considered the issue of genuineness.
>
> . . .
>
> If the record lacks any indication that the trial court considered the totality of the circumstances relevant to whether a strike was exercised for a discriminatory purpose, the reviewing court, which is confined to the cold record before it, cannot assume that a genuineness inquiry was actually conducted and give deference to the trial court.

*Id.* at 978. Based on those initial observations, we ultimately concluded:

23

> Here, the challenged . . . prospective juror was similarly situated to the white male alternate juror who was accepted without challenge, despite that fact that he had also managed several family owned restaurants. As a result, the trial court should have made further inquiry into the challenged strike.

*Id.* at 981.

Here, when the state sought to use a peremptory strike on the prospective African-American juror based on her being a Jehovah's Witness, the state's race-neutral explanation for the strike was based on the prosecutor's twenty years of experience screening other Jehovah's Witnesses as prospective jurors who uniformly said they "can't sit in judgment" of others. The genuineness of that race-neutral explanation is more convincing than the *Landis* prosecutor's rank speculation that the prospective juror might be sympathetic to the defendant in a drug prosecution because "I worked in a restaurant a lot. A lot of personal drugs run rampant." *Id.* at 976. An additional distinguishing fact between the instant case and *Landis* is that the record here does not mention another prospective juror who was similarly situated to the prospective juror at issue but who was a different race, i.e., a Jehovah's witness who was not an African-American, whereas in *Landis*, our opinion relied in part on the fact the challenged prospective juror was similarly situated to a white male alternate juror who was accepted without challenge, despite that fact that the alternate also had managed several family owned restaurants. The trial court appears to have considered the totality of these circumstances by commenting, "Listen, she's a Jehovah Witness . . . additionally I want to point out . . . there's a number of other African Americans on the jury, I think that based on the totality of the circumstances I think it rises to the legal of a non [race-]based reason."

### *Conclusion*

Having explained my opinions above, I concur with Judge Levine's ultimate conclusion to reverse the defendant's conviction and remand for a new trial. As I stated in the introduction to this concurring opinion, I agree with Judge Levine's well-reasoned conclusions in Parts II and III of his opinion that the trial court erred in overruling the defendant's religion-based objection based on the prospective juror's answers to the questions posed to her. A new trial is required.

MAY, J. dissenting.

The future of the peremptory challenge is tested in this appeal from a premeditated murder conviction. I respectfully dissent from the majority opinion in part. I would affirm the conviction.

The majority accurately recites the questions, answers, and discussion concerning the stricken venire member so I will not repeat them here.[2] Suffice it to say that the State moved to strike an African American venire member. Defense counsel asked for a race neutral reason, and it received one. So, the issue here is not whether the court erred in striking an African American venire member without a genuine race neutral reason. Rather, the issue morphed into whether the race neutral reason, which included the venire member's ability to be fair and impartial due (in part) to her religious beliefs, violated the defendant's constitutional rights.

The preservation issue relates to whether defense counsel preserved the religious-based objection, for it is clear that defense counsel preserved the race-based objection, and the State provided a reason other than race. I agree with the majority that both the race and religious based objections for the strike were preserved. But, I disagree that the State's exercise of its peremptory strike violated any constitutional right of the defendant.

We review a trial court's decision on a peremptory strike to determine if it was clearly erroneous. *Rodriguez v. State*, 826 So. 2d 494, 495 (Fla. 4th DCA 2002).

Here, the prospective juror filled out a questionnaire, indicating she had been a juror in a civil trial and listing her hobbies as "reading, witnessing a Jehovah Witness." Upon further questioning, it was determined that she had been the victim of a burglary and her brother was presently in jail for a crime involving a gun, which was prosecuted by the same Broward County State Attorney's Office that was prosecuting this case. She stated however that she could be fair and impartial.

The State explained its concern over what it perceived as a heightened burden of proof expressed by the venireperson and its general concern that members of this religion have previously indicated a refusal to stand

---

[2] We denied a subsequent petition for writ of prohibition on the juror issue. *Bilotti et al. v. State,* No. 4D15-1687 (Fla. 4th DCA May 1, 2015) (dismissing the petition without prejudice by court order).

in judgment of others. The trial court accepted the State's reason for the strike as genuine and struck the prospective juror. The defendant now appeals.

- ***The History of Peremptory Challenges***

Over a century ago, the United States Supreme Court described the peremptory challenge as "one of the most important of the rights secured to the accused." *Pointer v. U.S.*, 151 U.S. 396, 408 (1894). Peremptory challenges are rooted in English common law. *See* John P. Marks, *Bader v. State: The Arkansas Supreme Court Restricts the Role Religion May Play in Jury Selection*, 55 Ark. L. Rev. 613, 622 (2002). The founders of the United States "preserved the English peremptory system to ensure that jurors are impartial and will make determinations solely on the basis of the evidence." Michael J. Plati, *Religion-Based Peremptory Strikes in Criminal Trials and the Arizona Constitution: Can They Coexist?*, 26 Ariz. St. L.J. 883, 885 (1994).

"The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain v. Alabama*, 380 U.S. 202, 220 (1965). Peremptory challenges are often "exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another.'" *Id.* (quoting *Lewis v. U.S.*, 146 U.S. 370, 376 (1892)).

In Florida, a criminal defendant is guaranteed the right to a trial by an impartial jury, which is accomplished in part by the use of the peremptory challenge. *State v. Alen*, 616 So. 2d 452, 453 (Fla. 1993). A peremptory challenge can, however, be a tool that can be transformed into a disguise for discrimination against distinct groups of people. *Id.*

A prosecutor cannot exercise peremptory challenges solely on account of a prospective juror's race. *Batson v. Kentucky*, 476 U.S. 79, 80 (1986). Florida has extended this protection to ethnic groups, if the group is a "cognizable class." *Alen*, 616 So. 2d at 454.

Indeed, we have previously held it was error to allow a peremptory challenge based on the prospective juror's Pakistani ethnicity or Muslim religion alone. *Olibrices v. State*, 929 So. 2d 1176, 1180 (Fla. 4th DCA 2006). The Third District also held the striking of a venire member based solely on a Jewish sounding last name was unconstitutional. *Joseph v. State*, 636 So. 2d 777, 779 (Fla. 3d DCA 1994).

But, the United States Supreme Court has not yet extended *Batson* to peremptory challenges based on religion.[3]  *See State v. Davis*, 504 N.W.2d 767 (Minn. 1993), *cert. denied*, 511 U.S. 1115 (1994).  Perhaps this is because of the unique place the peremptory challenge occupies in our jurisprudence.  *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 148 (1994) (providing that gender and race are unconstitutional proxies for juror impartiality, and reaffirming the Court's commitment to jury selection procedures free from group stereotypes rooted in historical prejudice).

In *J.E.B.*, Justice O'Connor expressed her concern for the unique importance of the peremptory challenge.  "Limiting the accused's use of the peremptory challenge is a 'serious misordering of our priorities,' for it means 'we have exalted the right of citizens to sit on juries over the rights of the criminal defendant, even though it is the defendant not the jurors, who faces imprisonment or even death.'"  *Id.* at 150 (O'Connor, J., concurring) (citations omitted).

"Requiring the defendant to show actual bias-the standard applicable to cause challenges-for the forced expenditure of a peremptory challenge renders the separate statutory grant of peremptory challenges totally meaningless."  *Busby v. State*, 894 So. 2d 88, 100 (Fla. 2004).  "The fact that some unbiased juror may be excused in the process is an affordable price to pay for removing doubts about a particular juror's impartiality and competence, especially when the vote of one biased juror can make a critical difference."  *Davis*, 504 N.W.2d at 770.

---

[3] At the state level, courts have been torn on whether *Batson* should be extended to religion.  *Compare State v. Purcell*, 18 P.3d 113, 121-22 (Ariz. Ct. App. 2001) (holding that Batson encompasses peremptory challenges based on religious affiliation), *Fields v. People*, 732 P.2d 1145, 1153 n.15 (Colo. 1987) (concluding that peremptories based on religious affiliation violate at least state constitution), *State v. Hodge*, 726 A.2d 531, 552-53 (Conn. 1999) (holding that federal law prohibits peremptories based on religious affiliation), *and State v. Levinson,* 795 P.2d 845, 849-50 (Haw. 1990) (concluding that peremptories based on religious affiliation violate at least state constitution), *with Davis*, 504 N.W.2d at 771 (declining to extend Batson to strikes based on religious affiliation), *State v. Gowdy*, 727 N.E.2d 579, 586 (Ohio 2000) (holding religious beliefs are a race-neutral and non-pretextual basis for exercising a peremptory challenge because religion is often the foundation for an individual's moral values), *Casarez v. State*, 913 S.W.2d 468, 496 (Tex. Crim. App. 1994) (holding that state interests in peremptory challenges justify excluding prospective jurors based on their religious affiliation), *and James v. Commonwealth,* 442 S.E.2d 396, 398 (Va. 1994) (holding the venireperson's display of a religious symbol was a race neutral reason for exercising a peremptory challenge).

- ***This Case***

Here, the venireperson informed the court she was a Jehovah's Witness in her response to a questionnaire. The court asked if her religion would prevent her from being impartial and she said "if the evidence that's provided to me is **clear cut and concise** I would be able to." (emphasis added). The State responded that the venireperson's need for "clear cut and concise" evidence indicated a higher burden of proof than beyond a reasonable doubt. The question then is whether the record supports the trial court's decision that the State's reasoning was genuine.

Our Constitution forbids the use of peremptory challenges based solely on race and gender. *Alen*, 616 So. 2d at 453-54; *Abshire v. State*, 642 So. 2d 542, 543-44 (Fla. 1994). But, a prospective juror's actual beliefs can be a proper basis for exclusion. In fact, we have upheld the **race-neutral** strike of an African American church pastor based on a prosecutor's belief that the pastor would be too sympathetic despite the pastor saying he could remain impartial. *See Rodriguez v. State*, 826 So. 2d 494 (Fla. 4th DCA 2002). And, our supreme court upheld the striking of a venire member because she was a psychology teacher and Catholic as **race-neutral**. *Happ v. State*, 596 So. 2d 991 (Fla. 1991), *rev'd on other grounds*, 506 U.S. 949 (1992).

The majority suggests that because the prospective juror indicated she could be fair and impartial, it must be true. But, "where a prospective juror is challenged for a race-neutral reason, the fact that the juror asserts that he or she can nevertheless be fair and impartial does not mean that the challenging party must be satisfied with the response." *Cunningham v. State*, 838 So. 2d 627, 630 (Fla. 5th DCA 2003) (citing *Symonette v. State*, 778 So. 2d 500, 503 (Fla. 3d DCA), *rev. denied*, 794 So. 2d 606 (Fla. 2001)); *see also Peters v. State*, 874 So. 2d 677, 679 (Fla. 4th DCA 2004) ("[C]lose cases should be resolved in favor of excusing the juror rather than leaving a doubt about the juror's impartiality.").

The State presented a facially **race-neutral** reason for the strike, the heightened burden of proof expressed by the prospective juror. In addition, the prospective juror admitted during voir dire that she had been the victim of a burglary and her brother was presently in jail for a crime involving a gun, which was prosecuted by the Broward County State Attorney's Office even though she denied it would affect her ability

to serve.  The court also noted the prospective juror wavered at times, especially considering sentencing.

"There is no specific threshold of neutrality that must be satisfied by the party explaining the peremptory strike"; there just needs to be a **race-neutral** reason.  *Cobb v. State*, 825 So. 2d 1080, 1083 (Fla. 4th DCA 2002) (citation omitted).  "[W]e must rely on the superior vantage point of the trial judge, who is present, can consider the demeanor of those involved, and get a feel for what is going on in the jury selection process."  *Id.* at 1086 (citation omitted).

Nevertheless, the majority suggests that the religious-based reasons given here were insufficient or illegitimate to justify the striking of the venireperson, and suggests the State struck the venireperson solely on her religion.  The majority is mistaken.

The record reflects the State expressed its concern about the venireperson's ability to stand in judgment of others as expressed by her need for clear and concise evidence, a burden the State felt exceeded the requisite burden of proof.  The trial court also noted the venireperson's concern about the sentencing of the defendant.  And while not expressed by the trial court, the prospective juror had explained that she was a victim of a burglary and had a family member imprisoned for a crime involving a gun.

The majority also makes a point that the State objected to the venireperson before having the opportunity to question her about her beliefs.  While this may be true, the objection alerted the court to the issue, and allowed the court to arrange for the prospective juror to be questioned alone without embarrassing her in front of the other prospective jurors or tainting the other jurors.  Before the court determined the State's strike was genuine, the State did question her about her beliefs.

The majority relies in part on the court's expressed opinion that it would be malpractice for a prosecutor to allow a Jehovah's Witness to remain on the jury.  Significantly, that expression occurred after the court determined the State's reason—its concern about the heightened burden of proof—was genuine.

*Joseph v. State*, 636 So. 2d 777 (Fla. 3d DCA 1994), does not dictate a reversal in this case.  There, the Third District reversed a conviction when the trial court allowed a strike based solely on the venireperson's last name, connoting membership in the Jewish faith.  It did so relying

29

on *State v. Alen*, 616 So. 2d 4512 (Fla. 1993), and yet it was unclear whether the venireperson in *Joseph* was even a member of the Jewish faith.

The majority attempts to distinguish *Rodriguez v. State*, 826 So. 2d 494 (Fla. 4th DCA 2002), by suggesting the State's strike in that case was based solely on the prospective juror's occupation. That occupation happened to be of a religious nature. And, the State's concern that someone in a religious occupation might have difficulty being fair and impartial is no different than someone of a religious background having the same difficulty due to their religious beliefs.

Whatever spin the majority wants to place on *Davis*, one truth is self-evident. *Davis* held that *Batson* should not "be extended to peremptory strikes on the basis of religion." 504 N.W. 2d at 767.

It did so because the peremptory challenge is necessary when a cause challenge is denied by the court. *Id.* at 770. It did so because excusing some unbiased prospective jurors "is an affordable price to pay for removing doubts about a particular juror's impartiality and competence . . . ." *Id.* It did so to allow "the parties to exercise their own intuitive judgment with respect to perceived juror bias." *Id.*

It did so because "[t]he use of the peremptory strike to discriminate purposefully on the basis of religion does not . . . appear to be common and flagrant." *Id.* at 771. It did so because "there is no indication that irrational religious bias so pervades the peremptory challenge as to undermine the integrity of the jury system." *Id.*

It did so because

> when religious beliefs translate into judgments on the merits of the cause to be judged, it is difficult to distinguish . . . between an impermissible bias on the basis of religious affiliation and a permissible religion-neutral explanation. . . . A juror's religious beliefs are inviolate, but when they are the basis for a person's moral values and produce societal views . . . , it would not seem that a peremptory strike based on these societal views should be attributed to a pernicious religious bias.

*Id.*

And last, the majority suggests that striking a prospective juror based solely on membership in a religion, "no matter what the juror says during voir dire, is an impermissible 'religious test.'"  I respectfully disagree. What the prospective juror says during voir dire is critical to the determination of whether a strike is pre-textual or genuine.  What the prospective juror says cannot simply be ignored.  Indeed, our supreme court has instructed:  "If the explanation is facially race-neutral and the court believes that, **given all the circumstances surrounding the strike**, the explanation is not a pretext, the strike will be sustained (step 3)."  *Melbourne v. State,* 679 So. 2d 759, 764 (Fla. 1996) (emphasis added).

Here, the prospective juror acknowledged that if she were required to sentence the defendant, she would have difficulty.  The prospective juror acknowledged being a victim of a burglary.  The prospective juror acknowledged that her brother was currently serving time having been convicted in the same jurisdiction.  The prospective juror said she could convict the defendant if the evidence was clear and concise.

While her words may not have been legally precise, when all of these factors are taken into account, it cannot be said that the State's strike was based solely on the prospective juror's religion.  For that reason, I dissent from the majority's decision to reverse.  I would affirm the conviction and sentence.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing***

31